In The United States District Court
For The State Of Delaware

10/22/07

Angelo L. Clark
        Plaintiff,                    ) Civ. Action No. 06-465-S.L.R.
                                      )
                                      )
V.                                    )        FILED
Correctional Medical                  )      OCT 24 2007
    Services 'Defendents'             )
                                      )    U.S. DISTRICT COURT
                                           DISTRICT OF DELAWARE

Motion! - Case No. 06-465-SLR

1. Affidavid: For Discovery
                                              Angelo Lee Clark
2. Letter To Clerk of Court !                 Respectfully Yours

3. Supporting Affidavit For Documents
   For Discovery Motion: Civ-06-465-S.L.R. !

4. Honorable Judge Sue. L. Robinson: Here Are Some
   Of The Factual Documentations, From D.P.C. And
   Dept of Correction's Of How They The Dept of Corr-
   ections, Experimented And Also Treated Me Like
   A Ginnie Pig Or Research Monkey.

5. Please Honorable Sue L. Robinson! Try To Give
   One Or Two Of The Goverment Agents, A True
   Copy Of This Discovery. There Names Are. Chirunga
   And Dan Wiese! In The Department of Special
   Litigation Section In Washington, D.C. These
   People Here Wont Let My Mail Go Out Or Come In Sometime
   And To Me Thats Very Mentally Anguishly Wrong.
        I Also Have A Mental                  May You Judge
   Health Grievance In Here Unresolved        Sue L. Robinson
   About, The Sept 30, 07 - Oct 3rd - 07      Have A Blessed !
                   Overdose Of                        Day !

194

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 10/09/2007

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** CLARK, ANGELO L | **SBI#** : 00123209 | **Institution** : DCC | |
| **Grievance #** : 142983 | **Grievance Date** : 09/12/2007 | **Category** : Individual | |
| **Status** : Unresolved | **Resolution Status :** | **Resol. Date :** | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 09/12/2007 | **Incident Time :** 10:00 | |
| **IGC** : McCreanor, Michael | **Housing Location :** Bldg D/Infirmary, D/Observation, Cell 185, Single | | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** I inmate Angelo Lee Clark, feels personally that Dr. psychiatrist and his some what gang affiliates physicians and per nursing staff are doing what took place before I had to cut myself twice for relief to Delaware Psychiatric center for somewhat a better treatment center for individuals who had uncontrollable issues in the mind and ETC meaning the psychiatrist here, mainly Dr. Cunnuli are experienced and doing research to my mind and physical development.

**Remedy Requested** : I would like some professional real professional help relief in mind body heart and spirit because the med vendors here at DCC have experimented on my issues so much I don't know whether I'm coming or going some time.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance :** YES

**Date Received by Medical Unit :** 10/09/2007

**Investigation Sent :** 10/09/2007

**Investigation Sent To** :

**Grievance Amount :**

Judge Robinson you'll Probably Have To get intch with Kent General Hospital in Dover, and Talk to 'R.N.' Natasha ... And other Emp! MORRIS

Try iF you CAN To get All of my Records! Thank you!

AND OTHERS About That Chlozoril over dose The SECOND Time on 9-30-07 RECCOOPERATED ON -10-3-07

EXIBITS 1, THROUGH ALL AND SOME MORE ARE COMING. MEANING A-Z

1. OF - TORTURE MENTAL Anguish - CRUEL AND UNUSUAL PUNISHMENT

2. Civ Rights Violations PUNITIVE DAMAGE

3. MALPRACTICE

4. MISDIAGNOSAGE!

AND E.T.C. AND SO ON AND SO ON.

I NEED 'RELIEFE' AND MAINly COMPENSATION FOR being A Research MONKY

DELAWARE Psychiatric
CENTER

The Good People Who
CARE's About
people! All issues
( NOT Like The Dept
OF CORRECTIONS, They
ARE A DISORGANIZED Chop
Shop with Awaiting Tomb
STONE'S.



## MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.

**PHILADELPHIA OFFICE**
1800 JFK BOULEVARD - SUITE 1900
PHILADELPHIA, PA 19103
(215) 564-6688
FAX (215) 564-2526

**NEW YORK OFFICE**
530 SAW MILL RIVER ROAD
ELMSFORD, NY 10523
(914) 345-3701
FAX (914) 345-3743

**MARYLAND OFFICE**
600 BALTIMORE AVENUE - SUITE 305
TOWSON, MD 21204
(410) 339-6880
FAX (410) 339-6881

ATTORNEYS AT LAW
SUITE 800
913 N MARKET STREET
WILMINGTON, DE 19801

(302) 658-6538
FAX (302) 658-6537

**NEW JERSEY OFFICE**
COOPER RIVER WEST
6981 NORTH PARK DRIVE - SUITE 300
PENNSAUKEN, NJ 08109
(856) 663-4300
FAX (856) 663-4439

**PITTSBURGH OFFICE**
707 GRANT STREET
GULF TOWER - SUITE 2600
PITTSBURGH, PA 15219
(412) 391-6171
FAX (412) 391-8804

**BUCKS COUNTY OFFICE**
10 SOUTH CLINTON STREET - SUITE 302
DOYLESTOWN, PA 18901
(267) 880-3696
FAX (267) 880-0545

October 9, 2007

Attn: Ms. Francesca Tasson
U. S. District Court
for the District of Delaware
844 North King Street, #4209
Wilmington, DE 19801

> **Re:**     **Clark v. CMS, et al.**
> **C. A. No. 06-465-SLR**
> **Our File No. 413-79533**

Dear Ms. Tasson:

Attached is the clocked in copy of a courtesy copy of a Motion filed on October 1, 2007 (D.I. 72).

Thank you and please call with any questions or advise if I should do anything further.

Respectfully submitted,

PATRICK G. ROCK

PGR/mlm
Enc.
cc:     Mr. Angelo Clark (w/o enclosures)

DE090278.1

# MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.

**PHILADELPHIA OFFICE**
1800 JFK BOULEVARD · SUITE 1900
PHILADELPHIA, PA 19103
(215) 564-6688
FAX (215) 564-2526

**NEW YORK OFFICE**
530 SAW MILL RIVER ROAD
ELMSFORD, NY 10523
(914) 345-3701
FAX (914) 345-3743

**MARYLAND OFFICE**
600 BALTIMORE AVENUE · SUITE 305
TOWSON, MD 21204
(410) 339-6880
FAX (410) 339-6881

ATTORNEYS AT LAW
SUITE 800
913 N MARKET STREET
WILMINGTON, DE 19801

(302) 658-6538
FAX (302) 658-6537

September 18, 2007

**NEW JERSEY OFFICE**
COOPER RIVER WEST
6981 NORTH PARK DRIVE · SUITE 300
PENNSAUKEN, NJ 08109
(856) 663-4300
FAX (856) 663-4439

**PITTSBURGH OFFICE**
707 GRANT STREET
GULF TOWER · SUITE 2600
PITTSBURGH, PA 15219
(412) 391-6171
FAX (412) 391-8804

**BUCKS COUNTY OFFICE**
10 SOUTH CLINTON STREET · SUITE 302
DOYLESTOWN, PA 18901
(267) 880-3696
FAX (267) 880-0545

PATRICK G. ROCK
Member DE, ME & MA Bars
prock@moodlaw.com

Inmate Angelo Clark
SBI #123209
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

*Three Negotiating Lawyer*
*Patrict G. Rock*
*302-658-6538*

      **Re:**    **Clark v. CMS, et al.**
             **Our File No. 431-79533**

Dear Mr. Clark:

    This will confirm that you called my office last night to discuss settlement negotiations. I write this letter to memorialize some of what we discussed to avoid misunderstanding and to avoid the potential for misunderstanding in our future discussions. Also, you have indicated that you will write me a letter to reiterate what we discussed so that I can have some writing from you to memorialize what you have told me.

    You explained that you were in Kent General Hospital from September 13, 2007 to September 16, 2007 and you were told that you suffered a seizure of some kind. You explained that your admittance to the hospital is the reason why you did not contact me in the past week.

    You explained that you want to settle your case and the initial demand was that you wanted to go to the Delaware Psychiatric Center (DPC) and you wanted $10,000. You explained that you wanted your siblings and/or children to have something for your troubles (but I had a difficult time understanding what you were saying). I explained that I have no authority to settle the case and that I believe that the defendant will prevail in a Summary Judgment Motion. I also tried to impress upon you that your claim is for psychiatric care and it appears that you received psychiatric care.

    You had said that you prevailed in your request for a Temporary Restraining Order, but I explained that the Judge did not rule in your favor. Nonetheless, I explained that the Defendant is likely to prevail in the case and that you probably will not receive any money. You asked what I thought your demand should be and I said I thought you were going to demand $500. You then lowered your demand to $1,500 and said you still want to go to the DPC. I explained that I have

MARKS, O'NEILL, O'BRIEN & COURTNEY, P.C.

nothing to do with whether you go to the Delaware Psychiatric Center and it cannot be part of any negotiations. I asked you if your demand is then is $1,500 and you said it was between $1,500 to $2,500.

I look forward to receiving your letter so I can confirm that I understand what you are demanding. I reiterate that I do not have authority to settle the case and I do not have authority to make any offers. Once I confirm what your demand is I will send it to the Client and find out if the Client wishes to accept your demand or make a counter-offer or simply reject the demand.

Finally, please be advised that you have been Ordered by the Court to refrain from sending anything to the Court such as the nitroglycerin patches that you had been putting on some papers. I hope you understand the seriousness of that and I ask that you do not send me any paperwork with such patches either.

Thank you and I look forward to hearing from you.

Very truly yours,

PATRICK G. ROCK

PGR/mm

DE088417.1

*USMS Copy*

CLARK

Corporate/Entity Defendant

(CMS)

## RETURN OF WAIVER OF SERVICE OF SUMMONS

I acknowledge receipt of the request that I can waive service of summons in the matter of C.A. No.06-465 in the United States District Court of Delaware. I have also received a copy of the complaint in the action, two copies of this form, a copy of the Order of the Court authorizing service and a means by which I can return the signed waiver without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that the entity on whose behalf I am acting be served with judicial process in the manner provided by Rule 4.

The entity on whose behalf I am acting will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the Court, except for objections based on a defect in the summons or in the service of the summons. I understand that a judgement may be entered against the party on whose behalf I am acting if a response is not served and filed within 60 days after: May 18, 2007.

Date: 6 18 2007

Signature of Defendant        Printed or Typed Name   MEGAN MANTZAVINOS, Counsel

                                                       -to CMS

### DUTY TO AVOID UNNECESSARY COST OF SERVICE OF SUMMONS

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary cost of service of the summons and the complaint. A defendant located in the United States, who, after being notified of an action and asked to waive service of summons on behalf of a plaintiff located in the US, fails to do so will be required to bear the cost of such service unless good cause be shown for that defendant's failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over defendant's person or property. A defendant who waives service of summons retains all defenses and objections, except any relating to the summons or the service of summons, and may later object to the jurisdiction of the Court or to the place to where the action has been brought.

A defendant who waives service must within the time specified on the "Return of Waiver" form served on plaintiff, if unrepresented or on plaintiff's attorney, a response to the Complaint and must also file a signed copy of the response with the Court. If the answer or a motion is not served within this time, a default judgement may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

2007 JUN 20 AM 9:49

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

U.S. Department of Justice
United States Marshals Service

**PROCESS RECEIPT AND RETURN**
See Instructions for "Service of Process by the U.S. Marshal"
on the reverse of this form.

| PLAINTIFF ANGELO LEE CLARK | COURT CASE NUMBER OC-465 SLR |
|---|---|
| DEFENDANT CORRECTIONAL MEDICAL SERVICES (ET-AL) | TYPE OF PROCESS ORDER/COMPLAINT |

| SERVE | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN |
|---|---|
| | CORRECTIONAL MEDICAL SERVICES |

ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)

**AT** 1201 COLLEGE PARK DRIVE, Suite 101 DOVER, DELAWARE 19904

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

Angela Lu Clark
Delaware Psychiatric Center
JANE E. Mitchell Bldg
1901 North Dupont Hwy
NEW CASTLE, DELAWARE 19720

| Number of process to be served with this Form - 285 | 1 |
|---|---|
| Number of parties to be served in this case | 8 |
| Check for service on U.S.A. | ✓ |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All
Telephone Numbers, and Estimated Times Available For Service):

PAUPER CASE

SUEING I.E. FROM - 2-4-6-8
AND ALL
CORRECTIONAL MEDICAL SERVICES
PERSONAL

| Signature of Attorney or other Originator requesting service on behalf of: Angela Lu Clark | ☒ PLAINTIFF ☐ DEFENDANT | TELEPHONE NUMBER 302-654-5976 302-255-9701 | DATE 5/15/07 |
|---|---|---|---|

## SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin No. | District to Serve No. | Signature of Authorized USMS Deputy or Clerk | Date 5-18-07 |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served, ☒ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

| Name and title of individual served (if not shown above) | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|
| Address (complete only if different than shown above) | Date of Service 6/18/07  Time  am pm |
| | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or. | Amount of Refund |
|---|---|---|---|---|---|---|

REMARKS:

Waiver returned

| **PRIOR EDITIONS MAY BE USED** | **1. CLERK OF THE COURT** | **FORM USM-285 (Rev. 12/15/80)** |
|---|---|---|

68 at C-34-53). Clendaniel admitted to having had inmates out of their cells in violation of the prison's policies, and the Administrative Defendants disciplined Clendaniel for his violation. The Administrative Defendants also vigorously investigated the allegations that Clendaniel was having sexual relationships with inmates; however, their investigation revealed no evidence proving the truth of these allegations. (D.I. 68 at C-34-39). Second, to establish deliberate indifference in the failure to train and supervise context, courts have generally required a pattern of violations. *See e.g. Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)* (discussing failure to train in context of municipality liability); *Berg v. County of Allegheny, 219 F.3d 261, 275-276 (3d Cir.2000)* (same). The Clendaniel incident is a single incident, which in the Court' view is insufficient to establish a pattern of violations. Given the policies and training materials promulgated by the Administrative Defendants, the lack of evidence concerning a pattern of violations of these policies by employees, and the Administrative Defendants' response to the Clendaniel incident, the Court concludes that Plaintiff cannot establish that the Administrative Defendants were deliberately indifferent with regard to the training and supervision of correctional officers and the promulgation of effective policies.[FN7] Because Plaintiff *426 cannot as a matter of law establish the violation of a constitutional right, the Court concludes that the Administrative Defendants are entitled to qualified immunity on Plaintiff's failure to train and supervise claim.

FN7. In the alternative, even if Plaintiff could establish deliberate indifference, the Court concludes that Plaintiff cannot establish a causal link between the alleged failure to train and Plaintiff's injury. Plaintiff alleges that Defendant Hawkins did not just have sexual relations with her, but that Defendant Hawkins raped her with criminal intent. Plaintiff has not alleged what policies, procedures or training the Administrative Defendants could have given correctional officers to prevent such an intentional crime of violence. Indeed, Plaintiff offers no evidence to establish that even if additional training or policies would have been implemented, the criminal act by Defendant Hawkins would have been averted. *See e.g. Abdeljalil v. City of Fort Worth, 55 F.Supp.2d 614, 620*

(N.D.Tex.1999) (rejecting failure to train and supervise claim where no evidence existed that additional training would have prevented employee from intentionally stealing property). Defendant Hawkins testified that he was fully aware that sexual relations with inmates, whether consensual or not, was prohibited and that he could be criminally charged for engaging in such conduct, yet Defendant Hawkins allegedly engaged in the very conduct which he knew was against prison policies and state law. (D.I. 68 at C-65). Because Plaintiff cannot demonstrate a causal link between the alleged failure to train and her injuries, the Court concludes that Plaintiff cannot establish the violation of a constitutional right based on the failure to train and supervise.

D. Post-Rape Trauma and Medical Care Claim

MY BRAIN WAS

Plaintiff's claim concerning her medical care focuses primarily on the psychological care and treatment by the prison. Specifically, Plaintiff contends that the Administrative Defendants were deliberately indifferent to her psychological care following the alleged rape. Plaintiff submits an expert report from Susan Fiester, M.D. noting that Plaintiff received psychiatric treatment and medications, but opining that her treatment and medications were inadequate. (D.I. 59 at 39; D.I. 61 at B-16). According to Plaintiff, this expert report is sufficient to create a genuine issue of material fact as to whether the Administrative Defendants were deliberately *THE MERE* indifferent to Plaintiff's serious medical needs. *FACTS About MY MENTAL CAPACITY NEEDS* In response to Plaintiff's arguments, the Administrative Defendants offer the report of their own expert, Dr. Antonio Sacre, M.D., opining that the treatment Plaintiff received for her psychological complaints was adequate and appropriate. In addition, the Administrative Defendants contend that they cannot be held responsible for Plaintiff's medical and psychological care, because they were in no way directly involved with the care administered to Plaintiff. To this effect, the Administrative Defendants point out that Correctional Medical Systems provided Plaintiff with her psychological care. Because respondeat superior liability is precluded under Section 1983, the Administrative Defendants contend that they cannot be held liable for the actions or omissions of Correctional Medical Systems. Consistent with the framework for analyzing qualified immunity claims, the Court must

21815

# DELAWARE DEPARTMENT OF CORRECTIONS
## REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES

**FACILITY:**    H.R.Y.C.I.    (GANDER HILL)
**This request is for (circle one):** ~~MEDICAL~~ DENTAL MENTAL HEALTH

Angelo Lee Clark
**Name (Print)**

2-K-3
**Housing Location**

12-15-55
**Date of Birth**

00123209
**SBI Number**

3/6/06
**Date Submitted**

**Complaint (What type of problem are you having)** I AM STARTING TO HAVE PAIN IN CERTAIN PARTS OF MY BODY, AND I STILL HAVENT HAD MY EYES CHECKED. WHAT DO I HAVE TO DO GET SOME OUTSIDE LEGAL HELP.

Angelo Lu Clark
**Inmate Signature**

3/6/05
**Date**

**The below area is for medical use only. Please do not write any further**

Schedule to be seen

**S:** AND WHY I WAS AT KENT GENERAL ON 9-30-07 TO 10-3-07 THEY RAN ALL KINDS OF TESTS AND TOLD ME EVEN AFTER I GOT OUT OF HEAD SCAN MACHINE I'M BLEEDING IN SIDE MY HEAD, AND R.N. NATASHA MORRIS TOLD ME I'm VERY SICK

**O: Temp:** _____ **Pulse:** _____ **Resp:** _____ **B/P:** _____ **WT:** _____

This is why I believe

**A:** that the Lump that I have on the Back of my head has grown,

**P:** and still cause me great pain

**E:** And all they been for years giving me th Pain is 600 Motrin Tablets or 600 Tylenol Tablets

RECEIVED
MAR 0 7 REC'D
By

**Provider Signature and Title**    **Date**    **Time**

3/1/99 DE01
Form# MED 263

# DELAWARE DEPARTMENT OF CORRECTIONS
# REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES
# FACILITY: DELAWARE CORRECTIONAL CENTER

This request is for (circle one): MEDICAL **DENTAL** MENTAL HEALTH

EXAMINED / PROFESSION A.S.A.P

Name (Print): ANGELO LEE CLARK

Housing Location: Bg #19 - upper - 2-cell Buz

Date of Birth: 12-15-56

SBI Number: 123209

Date Submitted: 11/29/06

Complaint (What type of problem are you having)? IT SEEMS LIKE EVERY SINCE I WAS Addmitted IN The INFIRMARY - ON - 11/1/06 FOR Cutting mySELF ON - 11-2/06 - NURSE 'RN' DANYEE' AND Blood LADY! 'STEPHANIE' - DANYEE CLEANED My Cut AS SOON AS SHE LEFT The H(O)S PATIENT RooM NEXT DooR, AND STEPHANIE Took Blood FRom ME AND SAID DR. OTT ORDERED. AND SHE RESIGNED 2-MONTHS AGO.

Inmate Signature: Angelo Lee Clark

Date: 11/29/06

**The below area is for medical use only. Please do not write any further.**

S: 11/26/06 ... there were any reason for you to be charting ...

SO Dow ALL I DO IS DEFICA SIX OR SEVEN TIMES DAILY!

O: Temp: Pulse: Resp: B/P: WT: By a physician, the nurse ...

A: would refer you.. Nurse are capable of making ...

P: ...

Possibly have HIV Now ALONG with HEpATITUS C-E.T.C FEAR FOR my LIFE!

E: it still feel as though Correctional medical system gave me something even if its not Aids, I Just don't feel right! Like my old self.

Provider Signature & Title

Date & Time

3/1/99 DE01

FORM#:

MED

263

# Schizophrenia Fact Sheet

* It is estimated that more than 2.1 million American now have schizophrenia. There are more Americans with schizophrenia than there are residents of North Dakota, and Wyoming combined.

* One of every hundred Americans will fall victim to schizophrenia.

*Three-quarters of persons with schizophrenia develop the illness between 16 and 25 years of age. Initial onset before age 14 and after age 30 is unusual.

* Eugen Bleuler, A Swiss psychiatrist, introduced the term "schizophrenia" in 1911. In German, the term means "splitting of the thought process." The illness existed in earlier times under different names.

* Schizophrenia is not the same as "split personality." The illness depicted in "Three Faces of Eve" and "Sybil" is multiple personality disorder, or dissociative disorder--different from schizophrenia.

* Perhaps the most familiar symptoms of schizophrenia are hallucinations and delusions. Three-quarters of all schizophrenic persons have these symptoms, although not all those who have them are schizophrenics. Sometimes hallucinations are found in manic depressive illness, organic brain disorders, or substance abuse cases.

* Other symptoms of schizophrenia include "thought broadcasting" (in which it seems that one's thoughts are being transmitted externally), "thought insertions"(in which it seems that someone else's thoughts are being inserted into one's mind), and "thought blocking" (in which it seems that one's thoughts are being stopped by an external force). Altered sense of self, extreme confusion in thinking, and inappropriate responses to the environment can all be symptoms of schizophrenia.

* To be diagnosed as having schizophrenia, one must have associated symptoms for at least six months.

* The most common form of hallucinations are auditory experiences such as "voices." Other forms of hallucinations include visions that cannot be externally validated, or certain perceptions of touch, smell or taste.

*Another "mistaken belief" of a patient is a paranoid delusion in which a person may feel that he or she is being persecuted, when there is no basis for this in reality. Examples include a mistaken belief that the FBI or the CIA is tapping one's phone or that the Mafia is arranging for a hit man to "put one away."

*There is no credible scientific support for megavitamins (such as niacin) as an effective general treatment for schizophrenia.

*Sometimes persons with schizophrenia have "delusions of grandeur" in which they may believe that they are exalted persons, such as Jesus or Moses, or that they have been given some special message for humanity.

* Studies have indicated that 25 percent of those having schizophrenia recover completely, 50 percent are improved over a ten-year period, and 25 percent do not improve over time. This could be called the "rule of quarters." Recent advances in medication treatment have decreased the percentage of people who previously were deemed as unimproved.

*Scientists do not have unanimous agreement as to the cause of schizophrenia. Evidence indicates that the brains of persons with schizophrenia, as a group, are different than those who do not have the illness, and patients with schizophrenia have an overabundance of the brain chemical dopamine. A genetic factor is also supported by research. Additionally, man persons with schizophrenia claim that stressful events are a prelude to a psychotic break.

* By far the most effective treatments to date for schizophrenia are antipsychotic medications. Studies indicate that these drugs are highly effective for 70 percent of patients with schizophrenia. Another measure is that three out of five patients with schizophrenia (60%) stayed out of the hospital over a long period of time when continuing to use antipsychotic drugs, whereas those discontinuing the drugs had only one out of five (20%) chance of avoiding rehospitalization. In addition, according to one relieving auditory hallucinations, or voices.

*The Side effects of antipsychotic drugs are an issue that cannot be ignored. Some of these side effects are not serious and wear off over time. Other are serious and permanent. Patients should engage their psychiatrists in frank discussion about the questions of side effects of medications.

* Experts differ on the general value of psychotherapy for patients with schizophrenia. Many do benefit from supportive and reality-oriented "talk therapies" in conjunction with a drug regimen.

* Support groups can be a valuable adjunct in the treatment of schizophrenia-related disorders.

* Treatment and other economic costs due to schizophrenia are enormous, estimated between $32.5 and $65 billion (Rice, 1990, Wyatt, 1991). More hospital beds are occupied by persons with schizophrenia than any other illness.

*Some persons with schizophrenia have a certain flair for creativity. Both James Joyce and Vincent van Gogh had schizophrenia-related symptoms in the form of auditory hallucinations. The list included William Blake, August Strinberg, Ludwig Wittgenstein, Franz Kafka, and Friedrich Nietzsche. The famous ballet dancer Niijinski certainly had the illness.

National Schizophrenia Foundation
*Administering the Schizophrenics Anonymous (SA) Self-Help Network*
403 Seymour Street, Suite 202, Lansing, MI 48933
(517) 485-7168/(800) 482-9534 (Consumer Line)/(517) 485-7180 (fax)
Web sites: www.NSFoundation.org

## Multi-Purpose Criminal Justice Facility
### Inter-Dept. Memo

2·G  —  1 $\mathcal{O}$

TO:            Angelo Clark

FROM:        Sgt. M. Moody, Inmate Grievance Chair

DATE:        7-21-05

RE:            MEDICAL GRIEVANCE # 05-15413

Please be advised that your medical grievance has been received in the office

of the Grievance Chair. In accordance with the Inmate Grievance Procedure

4.4, it has been forwarded to the Medical Department for processing.

If no one contacts you for an informal resolution or if your grievance can not

be resolved informally, you will automatically be scheduled for a grievance

hearing before the Medical Grievance Committee (MGC). Please keep in

mind your grievance is only one of numerous others received in this office

on a daily basis. Thank you for your patience.

*Mr. Berry!*
*I've been Complaining about*
*my Headaches along with*
*the growth in the Back*
*of my Head and trauma that*
*the Excessive meds have been putting*



Better information. Better health.

Article Link: http://www.webmd.com/hepatitis/hepc-guide/Hepatitis-C-Topic-Overview

# Hepatitis C Guide

## Topic Overview



© www.nucleusinc.com

**What is hepatitis C?**

Hepatitis C is a virus that infects the liver. In time, it can lead to permanent liver damage as well as cirrhosis, liver cancer, and liver failure.

Many people do not know that they have hepatitis C until they already have some liver damage. This can take many years. Some people who get hepatitis C have it for a short time and then get better. This is called acute hepatitis C. But most people who are infected with the virus go on to develop long-term, or chronic, hepatitis C.

Although hepatitis C can be very serious, many people can manage the disease and lead active, full lives.

**What causes hepatitis C infection?**

Hepatitis C is caused by the hepatitis C virus. It is spread from one person's infected blood to another person's blood.

You can get hepatitis C if:

You share needles and other equipment used to inject illegal drugs. This is the most common way to get hepatitis C in the United States.

You had a blood transfusion or organ transplant before 1992. As of 1992 in the United States, all donated blood and organs are screened for hepatitis C.

You get a shot with a needle that has infected blood on it. This happens in some developing countries where they use needles more than once when giving shots.

In rare cases, a mother with hepatitis C spreads the virus to her baby at birth, or a health care worker is accidentally exposed to blood that is infected with hepatitis C.

Experts are not sure if you can get hepatitis C through sexual contact. If there is a risk of getting the virus through sexual contact, it is very small.

You **cannot** get hepatitis C from casual contact such as hugging, kissing, sneezing, coughing, or sharing food or drink.

**What are the symptoms?**

Many people have no symptoms when they are first infected with the hepatitis C virus. If you do develop symptoms, they may include:

Feeling very tired.

Joint pain.

Belly pain.

Itchy skin.

Sore muscles.

Dark urine.

Yellowish eyes and skin (jaundice). Jaundice usually appears only after other symptoms have started to go away.

Most people go on to develop chronic hepatitis C but still do not have symptoms. This makes it common for people to have hepatitis C for 15 years or longer before it is diagnosed.

### How is hepatitis C diagnosed?

Many people find out that they have the virus by accident, when their blood is tested before a blood donation or as part of a regular checkup. Often, people with hepatitis will have high levels of liver enzymes in their blood.

If your doctor thinks you may have hepatitis C, he or she will talk to you about having a blood test. If the test shows hepatitis C antibodies, you have had hepatitis C at some point. A second test can tell if you have hepatitis C now.

When blood tests show that you have hepatitis C, you may need a liver biopsy to see if the virus has caused scarring in your liver. During a liver biopsy, a doctor will insert a needle between your ribs to collect a small sample of liver tissue to look at under a microscope.

Some people prefer to find out on their own if they have been exposed to hepatitis C. You can buy a home test called a Home Access Hepatitis C Check kit at most drugstores. If the test shows that you have been exposed to the virus in the past, be sure to talk to your doctor to find out if you have the virus now.

### How is it treated?

You and your doctor need to decide if you should take antiviral medicine to treat hepatitis C. It may not be right for everyone. If your liver damage is mild, you may not need medicine.

If you do take medicine, the best treatment is a combination of two medicines that fight infection: peginterferon and ribavirin. How well these medicines work depends on how damaged your liver is, how much virus you have in your liver, and what type of hepatitis C you have.

Taking care of yourself is an important part of the treatment for hepatitis C. Some people with hepatitis C do not notice a change in the way they feel. Others feel tired, sick, or depressed. You may feel better if you exercise and eat healthy foods. To help prevent further liver damage, avoid alcohol and illegal drugs and certain medicines that can be hard on your liver.

### Frequently Asked Questions

| | |
|---|---|
| **Learning about hepatitis C:** | What is hepatitis C? |
| | What causes hepatitis C? |
| | Can I prevent hepatitis C? |
| | What are the symptoms of hepatitis C? |
| | What happens in hepatitis C? |
| | What increases my risk for hepatitis C? |
| | How common is hepatitis C? |
| **Being diagnosed:** | How is hepatitis C diagnosed? |

Who can diagnose hepatitis C?

What are liver tests for hepatitis C?

What is a hepatitis C antibody test?

What blood test can show whether I have active hepatitis C infection?

What is a liver biopsy?

**Getting treatment:**

How is hepatitis C treated?

**DECISION POINT** Should I take medicines for hepatitis C?

What is combination antiviral treatment?

**Ongoing concerns:**

Will I need surgery?

**Living with hepatitis C:**

What can I do to treat hepatitis C at home?

**End-of-life issues:**

How can I prepare for end-of-life issues if needed?

**WebMD Medical Reference from Healthwise**    *healthwise*
Last Updated: September 28, 2005

*This information is not intended to replace the advice of a doctor.*

© 1995-2006, Healthwise, Incorporated, P.O. Box 1989, Boise, ID 83701. All Rights Reserved.

# DELAWARE DEPARTMENT OF CORRECTIONS
# REQUEST FOR MEDICAL/DENTAL SICK CALL SERVICES

**FACILITY:**   H.R.Y.C.I.   ~^NDER HILL)

**This request is for (circle one)** (M) L) **DENTAL  MENTAL HEALTH**

ANGELO LEE CLARK                               2-6-10
**Name (Print)**                              **Housing Location**

12-15-55              133209              8/11/05
**Date of Birth**        **SBI Number**        **Date Submitted**

**Complaint (What type of problem are you having)** _I KEEP HAVING AND EXPERIENCING_
_HEAD PAIN, ON A EVERYDAY BASIS. AND IVE WRITTEN SEVERAL SICK_
_CALL SLIPS, I WOULD LIKE TO KNOW WHEN I WILL BE SEEN._
_I HOPE A.S.A.P          THANK YOU._

Angelo Lu Clark                              8/11/05
**Inmate Signature**                              **Date**
**The below area is for medical use only. Please do not write any further**

Scheduled

**S:** _____

**O:  Temp: _____  Pulse: _____  Resp: _____  B/P: _____  WT: _____**

**A:** _____

**P:** _____

**E:** _____

**Provider Signature and Title        Date        Time**

3/1/99 DE01
Form# MED 263

## PATIENT VALUABLES ENVELOPE

*Angelo* — *Clark*.

THIS FACILITY CANNOT ASSUME RESPONSIBILITY FOR ITEMS RETAINED IN YOUR POSSESSION. PATIENT UNDERSTANDS THAT BY SIGNING BELOW HE/SHE IS AWARE OF THIS POLICY AND VERI-FIES THAT THE ITEMS LISTED BELOW AS INVENTORY ARE COR-RECT AND THAT THE ENVELOPE HAS BEEN SEALED IN HIS/HER PRESENCE.

SIGNATURE OF PATIENT:                          DATE:

ACCEPTED BY:                                    DATE:

NAME _Angelo Clark_

ROOM NO. _____

HOSP NO. _C54_   _MHHC_

PHYSICIAN _____

DATE _5-25-04_

### CASH

CURRENCY _17.00_

_$3.00 three dollars_

| NO. | VALUABLES (DESCRIPTION) | CHECK LIST (✓) |
|-----|------------------------|----------------|
| 1. | Black Shirt | |
| 2. | Black Pants. | |
| 3. | Black dress Shoes | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | Blue Cap. | |
| 11. | Misc Papers | |
| 12. | Fuji disposable Camera | |
| 13. | Black Wallet | |
| 14. | Delaware ID & DC | |
| 15. | Brown Belt | |

### REPOSSESSION OF VALUABLES – PATIENT ACKNOWLEDGEMENT OF RECEIPT IN ENTIRETY

_____     _____     _____     _____
PATIENT/RELATIVE/OTHER           DATE         HOSPITAL REPRESENTATIVE        DATE

FORM 789  BRIGGS, Des Moines, Iowa 50306  800-247-2343

PRINTED IN U.S.A.

# AMERICAN BOARD OF MEDICAL SPECIALTIES®

1007 Church Street, Suite 404   Evanston, IL 60201-5913   Phone: 847.491.9091
FAX: 847.328.3596
www.abms.org

**Members**
American Board of Allergy & Immunology
American Board of Anesthesiology
American Board of Colon & Rectal Surgery
American Board of Dermatology
American Board of Emergency Medicine
American Board of Family Medicine
American Board of Internal Medicine
American Board of Medical Genetics
American Board of Neurological Surgery
American Board of Nuclear Medicine
American Board of Obstetrics & Gynecology
American Board of Ophthalmology
American Board of Orthopaedic Surgery
American Board of Otolaryngology
American Board of Pathology
American Board of Pediatrics
American Board of Physical Medicine
   and Rehabilitation
American Board of Plastic Surgery
American Board of Preventive Medicine
American Board of Psychiatry & Neurology
American Board of Radiology
American Board of Surgery
American Board of Thoracic Surgery
American Board of Urology

**Associate Members**
Accreditation Council for
   Continuing Medical Education
Accreditation Council for
   Graduate Medical Education
American Hospital Association
American Medical Association
Association of American Medical Colleges
Council of Medical Specialty Societies
Educational Commission for
   Foreign Medical Graduates
Federation of State Medical Boards of U.S.
National Board of Medical Examiners

**Public Members**
L. Edward Bryant, Jr., Esq.
Lloyd B. Morgan
Rosemary A. Stevens, Ph.D.

**Officers, 2004-2005**
Harvey W. Meislin, M.D.
   Chair
Cynda A. Johnson, M.D., M.B.A.
   Vice Chair
Joel A. DeLisa, M.D., M.S.
   Secretary-Treasurer

**Staff**
Stephen H. Miller, M.D., M.P.H.
   President and CEO
Sheldon D. Horowitz, M.D.
   Associate Vice President
Julie J. Mohr, MSPH, Ph.D.
   Director of Research
Robert G. Nelson, M.B.A.
   Director of Business Development
Alexis L. Rodgers
   Director of Operations & Publications
Todd J. Tischendorf
   Director of Information Services &
   Systems Development

March 31, 2005

Julian Miller
Unit D-East F-22
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dear Mr. Miller:

Your letter was received at the American Board of Medical Specialties (ABMS) on March 28, 2005. The ABMS is the umbrella organization for 24 medical specialty boards. The main focus of ABMS and its 24 Member Boards is the process of certification of physician specialists in the United States.

The ABMS is not a referral service and does not give recommendations to patients. The ABMS does not process complaints or provide information regarding disciplinary actions that have been filed by the state. The ABMS can verify if a physician is certified by one of its 24 Member Boards.

The *Official ABMS Directory of Board Certified Medical Specialists,* which is available in many medical and public libraries, would be a useful resource to obtain more information regarding certification status of individual physicians. Also, the ABMS has a public education program which provides verbal verification of board certification at 1-800-CERT (776-2378).

In response to your questions:

1) There is no record of a Dr. Sitta Gombeh-Alie in the ABMS database.

2) Requirements of a Medical Director are determined by each health care organization. A health care organization can require certification but it is not the law.

It is hoped that this information is helpful to you and satisfactorily responds to your request.

Sincerely,

Sheldon D. Horowitz, M.D.
Associate Vice President

*This Document sir is for you to check to see if any of the Nurses or Psychiatrists or Medical Doctors had Legitimate Licenses to Practice.*

DCC **Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 10/09/2007

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | | | |
|---|---|---|---|---|
| **Offender Name :** CLARK, ANGELO L | **SBI#** | **:** 00123209 | **Institution** | : DCC |
| **Grievance #** : 142983 | **Grievance Date :** 09/12/2007 | | **Category** | : Individual |
| **Status** : Unresolved | **Resolution Status:** | | **Inmate Status :** | |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 09/12/2007 | | **Incident Time :** 10:00 | |
| **IGC** : McCreanor, Michael | **Housing Location :**Bldg D/Infirmary, D/Observation, Cell 185, Single | | | |
| INFORMAL RESOLUTION | | | | |

**Offender's Signature:**_____

**Date**              :_____

**Witness (Officer)**   :_____

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 10/09/2007

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | | |
|---|---|---|---|
| **Offender Name :** CLARK, ANGELO L | **SBI#** : 00123209 | **Institution** : DCC |
| **Grievance #** : 142983 | **Grievance Date** : 09/12/2007 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status :** | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 09/12/2007 | **Incident Time :** 10:00 |
| **IGC** : McCreanor, Michael | **Housing Location :** Bldg D/Infirmary, D/Observation, Cell 185, Single |

### IGC

**Medical Provider:** Contracted Health Services       **Date Assigned** 10/09/2007

**Comments:**

[ ] **Forward to MGC**            [x]  **Forward to Medical Provider**        [ ]  **Warden Notified**

[ ] **Forward to RGC**            **Date Forwarded to MGC :**

[ ] **Offender Signature Captured**      **Date Offender Signed**       :

**DCC Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Date: 10/09/2007

## GRIEVANCE INFORMATION - MEDICAL PROVIDER

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name :** CLARK, ANGELO L | **SBI#** : 00123209 | **Institution** : DCC |
| **Grievance #** : 142983 | **Grievance Date** : 09/12/2007 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status :** | **Inmate Status :** |
| **Grievance Type:** Health Issue (Medical) | **Incident Date** : 09/12/2007 | **Incident Time :** 10:00 |
| **IGC** : McCreanor, Michael | **Housing Location :** Bldg D/Infirmary, D/Observation, Cell 185, Single | |

### MEDICAL PROVIDER

**Provider Name :** Contracted Health Services          **Date Received :** 10/09/2007

### MEDICAL HISTORY

| Dates | Treatment |
|---|---|
| | |

### DECISION

**Decision Date:**                    **Vote :**

**Comments    :**

Date: 10/09/2007

DCC Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

*Some of Dept of Corrections, inadequacies to misdiagnose and then experiment and then Destroy!*

*6-27-07*

Westlaw.

357 F.Supp.2d 774
357 F.Supp.2d 774
**(Cite as: 357 F.Supp.2d 774)**

Page 1

**H**
Briefs and Other Related Documents
McCray v. WilliamsD.Del.,2005.
United States District Court,D. Delaware.
Tommy MCCRAY, Plaintiff,
v.
R. WILLIAMS and First State Medical System,
Defendants.
**No. CIV.04-173-SLR.**

Feb. 15, 2005.

**Background:** State inmate brought pro se § 1983
action against warden and prison medical system,
alleging deliberate indifference leading to excessive
risk to inmate's health. Warden moved to dismiss.

**Holdings:** The District Court, Robinson, Chief
Judge, held that:

(1) inmate was required to exhaust any administrative
remedies before filing complaint in federal court;

(2) inmate's status as pro se litigant did not except
him from exhaustion requirement;

(3) inmate's failure to exhaust administrative
remedies warranted dismissal of complaint;

(4) state inmate did not allege actual injury that was
prerequisite to claim under § 1983; and

(5) warden and prison medical staff did not act with
deliberate indifference to inmate's serious medical
needs.

Motion granted.
West Headnotes
**[1] Civil Rights 78 ☜1319**

78 Civil Rights
    78III Federal Remedies in General
      78k1314 Adequacy, Availability, and
Exhaustion of State or Local Remedies
        78k1319 k. Criminal Law Enforcement;
Prisons. Most Cited Cases
Action of which state inmate complained, that
transferring him to different correctional facility for

purposes of providing medical treatment increased
risk to his health, was "prison condition," in that it
related to nature of services provided in prison
environment, and therefore, pursuant to Prison
Litigation Reform Act (PLRA), inmate was required
to exhaust any administrative remedies available
before he filed § 1983 complaint in federal court. 18
U.S.C.A. § 3626(g); Civil Rights of Institutionalized
Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a); 42
U.S.C.A. § 1983.

**[2] Civil Rights 78 ☜1319**

78 Civil Rights
    78III Federal Remedies in General
      78k1314 Adequacy, Availability, and
Exhaustion of State or Local Remedies
        78k1319 k. Criminal Law Enforcement;
Prisons. Most Cited Cases
Purported emergency nature of medical needs
underlying state inmate's deliberate indifference
claim did not excuse his failure to exhaust
administrative remedies via prison grievance
procedure, as required by Prison Litigation Reform
Act (PLRA), before filing § 1983 complaint,
inasmuch as any filing of grievance would have
occurred after complained-of incident. Civil Rights
of Institutionalized Persons Act, § 7(a), 42 U.S.C.A.
§ 1997e(a); 42 U.S.C.A. § 1983.

**[3] Convicts 98 ☜6**

98 Convicts
    98k6 k. Actions. Most Cited Cases
State inmate's status as pro se litigant did not except
him from requirement, under Prison Litigation
Reform Act (PLRA), that prisoners must exhaust all
administrative remedies prior to filing action
challenging conditions of confinement in federal
court. Civil Rights of Institutionalized Persons Act, §
7(a), 42 U.S.C.A. § 1997e(a).

**[4] Convicts 98 ☜6**

98 Convicts
    98k6 k. Actions. Most Cited Cases
Although prisoner's pro se complaints are held to less
stringent standards than formal pleadings drafted by
lawyers, prisoner, as pro se litigant, is not entitled to
circumvent altogether administrative exhaustion
requirement established by Prison Litigation Reform

SHU LAW LIBRARY

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

97 S.Ct. 285
429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251
(Cite as: 429 U.S. 97, 97 S.Ct. 285)

Page 4

state corrections department medical director (Gray)
and two correctional officials, claiming that he was
subjected to cruel and unusual punishment in
violation of the Eighth Amendment for inadequate
treatment of a back injury assertedly sustained while
he was engaged in prison work. The District Court
dismissed the complaint for failure to state a claim
upon which relief could be granted. The Court of
Appeals held that the alleged insufficiency of the
medical treatment required reinstatement of the
complaint. Held: Deliberate indifference by prison
personnel to a prisoner's serious illness or injury
constitutes    cruel    and    unusual    punishment
contravening the Eighth Amendment. Here, however,
respondent's claims against Gray do not suggest such
indifference, the allegations revealing that Gray and
other medical personnel saw respondent on 17
occasions during a 3-month span and treated his
injury and other problems. The failure to perform an
X-ray or to use additional diagnostic techniques does
not constitute cruel and unusual punishment but is at
most medical malpractice cognizable in the state
courts. The question whether respondent has stated a
constitutional claim against the other petitioners, the
Director of the Department of Corrections and the
**288 warden of the prison, was not separately
evaluated by the Court of Appeals and should be
considered on remand. Pp. 289-293.

516 F.2d 937, reversed and remanded.

Bert W. Pluymen, Austin, Tex., for petitioners, pro
hac vice, by special leave of Court.

*98 Daniel K. Hedges, Houston, Tex., for
respondent, pro hac vice, by special leave of Court.
Mr. Justice MARSHALL delivered the opinion of the
Court.

Respondent J. W. Gamble, an inmate of the Texas
Department of Corrections, was injured on November
9, 1973, while performing a prison work assignment.
On February 11, 1974, he instituted this civil rights
action under 42 U.S.C. s 1983,$^{FN1}$ complaining of the
treatment he received after the injury. Named as
defendants were the petitioners, W. J. Estelle, Jr.,
Director of the Department of Corrections, H. H.
Husbands, warden of the prison, and Dr. Ralph Gray,
medical director of the Department and chief medical
officer of the prison hospital. The District Court, sua
sponte dismissed the complaint for failure to state a
claim upon which relief could be granted.$^{FN2}$ The
Court of Appeals reversed and remanded with
instructions to reinstate the complaint. 516 F.2d 937
(C.A.5 1975). We granted certiorari, 424 U.S. 907,
96 S.Ct. 1101, 47 L.Ed.2d 311 (1976).

FN1. Title 42 U.S.C. s 1983 provides:
"Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of any State
or Territory, subjects, or causes to be subjected, any
citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights,
privileges, or immunities secured by the Constitution
and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper
proceeding for redress."

> FN2.  It  appears  that  the  petitioner-
> defendants were not even aware of the suit
> until it reached the Court of Appeals. Tr. of
> Oral Arg. 7, 13-15. This probably resulted
> because the District Court dismissed the
> complaint  simultaneously  with  granting
> leave to file it in forma pauperis.

*99 I

[1] Because the complaint was dismissed for failure
to state a claim, we must take as true its handwritten,
pro se allegations. Cooper v. Pate, 378 U.S. 546, 84
S.Ct. 1733, 12 L.Ed.2d 1030 (1964). According to
the complaint, Gamble was injured on November 9,
1973, when a bale of cotton $^{FN3}$ fell on him while he
was unloading a truck. He continued to work but
after four hours he became stiff and was granted a
pass to the unit hospital. At the hospital a medical
assistant, "Captain" Blunt, checked him for a hernia
and sent him back to his cell. Within two hours the
pain became so intense that Gamble returned to the
hospital where he was given pain pills by an inmate
nurse and then was examined by a doctor. The
following day, Gamble saw a Dr. Astone who
diagnosed the injury as a lower back strain,
prescribed Zactirin (a pain reliever) and Robaxin (a
muscle relaxant),$^{FN4}$ and placed respondent on "cell-
pass, cell-feed" status for two days, allowing him to
remain in his cell at all times except for showers. On
November 12, Gamble again saw Dr. Astone who
continued the medication and cell-pass, cell-feed for
another seven days. He also ordered that respondent
be moved from an upper to a lower bunk for one
week, but the prison authorities did not comply with
that directive. The following week, Gamble returned
to Dr. Astone. The doctor continued the muscle
relaxant but prescribed a new pain reliever,
Febridyne, and placed respondent on cell-pass for
seven days, permitting him to remain in his cell
except for meals and showers. On November 26,
respondent **289 again saw Dr. Astone, who put

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 5

respondent back on the original pain reliever for five days and continued the cell-pass for another week.

> FN3. His complaint states that the bale weighed "6.00 pound." The Court of Appeals interpreted this to mean 600 pounds. 516 F.2d 937, 938 (CA5 1975).

> FN4. The names and descriptions of the drugs administered to respondent are taken from his complaint, App. A-5 A-11, and his brief, at 19-20.

*100 On December 3, despite Gamble's statement that his back hurt as much as it had the first day, Dr. Astone took him off cell-pass, thereby certifying him to be capable of light work. At the same time, Dr. Astone prescribed Febridyne for seven days. Gamble then went to a Major Muddox and told him that he was in too much pain to work. Muddox had respondent moved to "administrative segregation." FN5 On December 5, Gamble was taken before the prison disciplinary committee, apparently because of his refusal to work. When the committee heard his complaint of back pain and high blood pressure, it directed that he be seen by another doctor.

> FN5. There are a number of terms in the complaint whose meaning is unclear and, with no answer from the State, must remain so. For example, "administrative segregation" is never defined. The Court of Appeals deemed it the equivalent of solitary confinement. 516 F.2d, at 939. We note, however, that Gamble stated he was in "administrative segregation" when he was in the "32A-7 five building" and "32A20 five building," but when he was in "solitary confinement," he was in "3102 five building."

On December 6, respondent saw petitioner Gray, who performed a urinalysis, blood test, and blood pressure measurement. Dr. Gray prescribed the drug Ser-Ap-Es for the high blood pressure and more Febridyne for the back pain. The following week respondent again saw Dr. Gray, who continued the Ser-Ap-Es for an additional 30 days. The prescription was not filled for four days, however, because the staff lost it. Respondent went to the unit hospital twice more in December; both times he was seen by Captain Blunt, who prescribed Tiognolos (described as a muscle relaxant). For all of December, respondent remained in administrative segregation.

In early January, Gamble was told on two occasions that he would be sent to the "farm" if he did not return to work. He refused, nonetheless, claiming to be in too much pain. On January 7, 1974, he requested to go on sick call for his back pain and migraine headaches. After an initial refusal, he saw Captain Blunt who prescribed sodium salicylate (a *101 pain reliever) for seven days and Ser-Ap-Es for 30 days. Respondent returned to Captain Blunt on January 17 and January 25, and received renewals of the pain reliever prescription both times. Throughout the month, respondent was kept in administrative segregation.

On January 31, Gamble was brought before the prison disciplinary committee for his refusal to work in early January. He told the committee that he could not work because of his severe back pain and his high blood pressure. Captain Blunt testified that Gamble was in "first class" medical condition. The committee, with no further medical examination or testimony, placed respondent in solitary confinement.

Four days later, on February 4, at 8 a. m., respondent asked to see a doctor for chest pains and "blank outs." It was not until 7:30 that night that a medical assistant examined him and ordered him hospitalized. The following day a Dr. Heaton performed an electrocardiogram; one day later respondent was placed on Quinidine for treatment of irregular cardiac rhythm and moved to administrative segregation. On February 7, respondent again experienced pain in his chest, left arm, and back and asked to see a doctor. The guards refused. He asked again the next day. The guards again refused. Finally, on February 9, he was allowed to see Dr. Heaton, who ordered the Quinidine continued for three more days. On February 11, he swore out his complaint.

II

The gravamen of respondent's s 1983 complaint is that petitioners have subjected him to cruel and unusual punishment in violation of the Eighth Amendment, made applicable to the States by the Fourteenth. FN6 **290 See *102Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). We therefore base our evaluation of respondent's complaint on those Amendments and our decisions interpreting them.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

97 S.Ct. 285
429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251
**(Cite as: 429 U.S. 97, 97 S.Ct. 285)**

Page 2

350Hk1482 k. Proportionality. Most Cited Cases

(Formerly 110k1206.2(1), 110k1206(2))
Eighth Amendment proscribes punishments which are grossly disproportionate to the severity of crime. U.S.C.A.Const. Amend. 8.

**[5] Sentencing and Punishment 350H ⇌1452**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(C) Criminal Liability
            350Hk1451 Declaring Act Criminal
                350Hk1452 k. In General. Most Cited Cases

(Formerly 110k1213.7, 110k1213)
Eighth Amendment imposes substantive limits on what can be made criminal and punished. U.S.C.A.Const. Amend. 8.

**[6] Prisons 310 ⇌17(2)**

310 Prisons
    310k17 Maintenance and Care of Prisoners
        310k17(2) k. Medical and Mental Care. Most Cited Cases

(Formerly 310k17)
Government has obligation to provide medical care for those whom it is punishing by incarceration. U.S.C.A.Const. Amend. 8.

**[7] Sentencing and Punishment 350H ⇌1546**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment. Most Cited Cases

(Formerly 110k1213.10(3), 110k1213)
Infliction of unnecessary suffering on prisoner by failure to treat his medical needs is inconsistent with contemporary standards of decency and violates the Eighth Amendment. U.S.C.A.Const. Amend. 8.

**[8] Civil Rights 78 ⇌1091**

78 Civil Rights
    78I Rights Protected and Discrimination Prohibited in General
        78k1089 Prisons
            78k1091 k. Medical Care and Treatment. Most Cited Cases

(Formerly 78k135, 78k13.4(5))

**Sentencing and Punishment 350H ⇌1546**

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment. Most Cited Cases

(Formerly 110k1213.10(3), 110k1213)
Deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain proscribed by Eighth Amendment whether the indifference is manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed; regardless of how evidenced deliberate indifference to prisoner's serious illness or injuries states cause of action under civil rights statute. U.S.C.A.Const. Amend. 8; 42 U.S.C.A. § 1983.

**[9] Civil Rights 78 ⇌1098**

78 Civil Rights
    78I Rights Protected and Discrimination Prohibited in General
        78k1089 Prisons
            78k1098 k. Other Particular Cases and Contexts. Most Cited Cases

(Formerly 78k135, 78k13.4(5))
Accident even though it may produce added anguish is not on that basis alone to be characterized as wanton infliction of unnecessary pain on prisoner as the basis for a cause of action under civil rights statute. U.S.C.A.Const. Amend. 8; 42 U.S.C.A. § 1983.

**[10] Civil Rights 78 ⇌1091**

78 Civil Rights
    78I Rights Protected and Discrimination Prohibited in General
        78k1089 Prisons
            78k1091 k. Medical Care and Treatment. Most Cited Cases

(Formerly 78k135, 78k13.4(5))
Inadvertent failure to provide adequate medical care to prisoner cannot be said to constitute a wanton infliction of unnecessary pain on prisoner or to be repugnant to conscience of mankind for purpose of providing cause of action under civil rights statute.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

tch, 44, of Bear, set a Sept. 11 or October trial date regarding documents Dortch she declined to comment.

ee executives in an off-
iding Robert "Bobbie"
New Castle County po-
iversity of Delaware
ch then killed himself.
tch believed they were
wo other investors out

garding the $1.3 million purchase and
planned renovation of a former country
club in upstate New York.

But FBI investigators who specialize
in financial crimes found no violations of
federal law, said Special Agent Jerri Wil-
liams, a spokeswoman in Philadelphia.

would not say when the FBI closed its in-
quiry.

Paul Norris, the younger brother of
Robert Norris and Mark Norris, whom
Dortch also killed, said he can't imagine
why he suspected anything improper.

**See KILLINGS — A13**



three men, then
himself over
the purchase
of a former
country club
in New York,
police say.

---

*resist change to airport taxes*



The News Journal/FRED COMEGYS
jet after towing it to a temporary parking spot at New Castle Airport last week.

## uted to help fliers,
## usiness is feared

search-
infor-
airports
m.

ss money,
a signifi-
munities
." Baxley

ross the
business
t, such as
and Sus-
and the
ar Ches-
and fees
ying into
ercial air-

ports, such as Philadelphia Inter-
national Airport, to finance run-
way improvements, and other
construction and maintenance
projects.

A recent review found that na-
tionwide in the last decade, $7 bil-
lion in federal funding – which
comes in part from a 7.5 percent
tax passengers pay when they
purchase airplane tickets – has
gone toward improvements at
small airports that serve mostly
recreational and corporate fliers.

The Federal Aviation Admin-
istration says that reliance of
general aviation on revenue gen-
erated by taxes paid by commer-
cial fliers, like vacationing fami-
lies, isn't fair. If the ticket taxes

**See AIRPORTS — back page**

### Airport funding

The proposed FAA fee structure
change would affect all Delaware
airports, but the baseline funding
for four airports, each of which
currently receive $150,000, would
change significantly.



— **New Castle Airport** would
get **$400,000**

— **Summit Airport** would get
**$100,000**

— **Delaware Airpark**
(Cheswold) would get
**$400,000**

— **Sussex County
Airport** (Georgetown)
would get **$100,000**

The News Journal

---

# Delaware lays out prisoner care plan

## Inmate advocates praise step toward compliance

**By LEE WILLIAMS and ESTEBAN PARRA**
The News Journal

Five months after signing a compliance agree-
ment with the U.S. Department of Justice, the
Delaware Department of Correction released a 47-
page plan Thursday to improve medical and men-
tal health care in prisons by restoring the govern-
ment's control over the
medical staff and by
strengthening oversight of
its care providers.

The plan includes a for-
mal agreement with for-
mer Superior Court Judge
Joshua W. Martin III, now
in private practice in Wil-
mington, to serve as the in-
dependent monitor re-
quired in the memoran-
dum of agreement with
the Justice Department. It
did not lay out cost for the
implementation.

Martin did not return
calls seeking a comment about his new position.

The department's "Comprehensive Action
Plan" responds to a series of lapses in inmate med-
ical and mental health care first revealed by

**See INMATES — A2**

### INSIDE

Monitor praised for
can-do attitude. **A2**

Some problems and
solutions. **A2**

### ONLINE EXTRA

Read the full action
plan and the special
report "Delaware's
Deadly Prisons" at
**www.delawareonline.com.**

---

# Moderates seek Iraq funding deal

**By NOAM N. LEVEY**
Los Angeles Times

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANGELO CLARK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 06-465-SLR ) |
| REGIONAL MEDICAL FIRST CORRECTIONAL, MANAGER ANGELA WILSON, CORRECTIONAL MEDICAL SYSTEMS, and REGIONAL MANAGER ROBERT M. HOOPER, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this 14th day of December, 2006, having

screened the case pursuant to 28 U.S.C. § 1915 and § 1915A;

IT IS ORDERED that plaintiff's motions to amend/correct are

granted, that the motion to seal document is granted, and that

the claims against Regional Medical First Correctional, Manager

Angela Wilson, and Regional Manager Robert M. Hooper are

dismissed without prejudice for failure to state a claim upon

which relief may be granted pursuant to 28 U.S.C. § 1915 and §

1915A, for the reasons that follow:

1. **Background**. Plaintiff Angelo Clark, an inmate at the

Delaware Correctional Center ("DCC"), filed this civil rights

action on July 31, 2006 pursuant to 42 U.S.C. § 1983. (D.I. 2)

He amended his complaint a short time later. (D.I. 8) Plaintiff

appears pro se and has been granted leave to proceed in forma

pauperis.

2.  **Standard of Review.**  When a litigant proceeds in forma
pauperis, 28 U.S.C. § 1915 provides for dismissal under certain
circumstances.  When a prisoner seeks redress from a government
defendant in a civil action, 28 U.S.C. § 1915A provides for
screening of the complaint by the court.  Both 28 U.S.C. §
1915(e)(2)(B) and § 1915A(b)(1) provide that the court may
dismiss a complaint, at any time, if the action is frivolous,
malicious, fails to state a claim upon which relief may be
granted or seeks monetary relief from a defendant immune from
such relief.  An action is frivolous if it "lacks an arguable
basis either in law or in fact."  Neitzke v. Williams, 490 U.S.
319, 325 (1989).

3.  The court must "accept as true factual allegations in
the complaint and all reasonable inferences that can be drawn
therefrom."  Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(citing
Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993)).
Additionally, pro se complaints are held to "less stringent
standards than formal pleadings drafted by lawyers" and can only
be dismissed for failure to state a claim when "it appears
'beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief.'"  Haines
v. Kerner, 404 U.S. 519, 520-521 (1972)(quoting Conley v. Gibson,
355 U.S. 41, 45-46 (1957)).

-2-

4. **Discussion.** Plaintiff alleges he was given medication that has caused nerve damage, he has not seen a psychiatrist about his medication and, despite his complaints, he is not being treated appropriately. Filed as exhibits are medical grievances that specifically refer to complaints made about medical care provided by Correctional Medical Systems ("CMS") and its employees.

5. **Personal Involvement.** A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (citing Boykins v. Ambridge Area Sch. Dist., 621 F.2d 75, 80 (3d Cir. 1980); Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir. 1978)). Additionally, when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). The complaint contains no information to apprise Regional Medical First Correction of the claims brought against it. Accordingly, it is dismissed as a defendant, without prejudice, for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

6. Plaintiff also names as defendants Manager Angela Wilson

-3-

("Wilson") and Regional Manager Robert M. Hooper ("Hooper") in the caption of the complaint and in the section listing the defendants. It appears that plaintiff seeks to hold Wilson and Hooper liable on the basis of their supervisory positions. The complaint contains no allegations against the defendants other than to state their titles.

7. Supervisory liability cannot be imposed under 1983 on a respondeat superior theory. See Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). In order for a supervisory public official to be held liable for a subordinate's constitutional tort, the official must either be the "moving force [behind] the constitutional violation" or exhibit "deliberate indifference to the plight of the person deprived." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) (citing City of Canton v. Harris, 489 U.S. 378, 389 (1989)). There is nothing in the complaint to indicate that Wilson or Hooper were the "driving force [behind]" plaintiff's allegations. More so, the complaint does not indicate that these defendants were aware of plaintiff's allegations and remained "deliberately indifferent" to his plight. Sample v. Diecks, 885 F.2d at 1118. Therefore, the court will dismiss without prejudice the claims against Wilson and Hooper as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

-4-

✗  8.   Plaintiff filed several motions to amend/correct his
complaint and amended complaint.   The motions seek to have
documents considered as exhibits to the complaint.   (D.I. 10, 12,
14)   The motions are granted and the exhibits will be considered
as part of the record.   Plaintiff also moves to seal documents
which contain personal information.   (D.I. 13)   The motion is
granted.

     9.   **Conclusion.**   Based upon the foregoing analysis, the
claims against defendants Regional Medical First Correctional,
Manager Angela Wilson, and Regional Manager Robert M. Hooper are
dismissed, without prejudice, as frivolous pursuant to 28 U.S.C.
§ 1915 and § 1915A.   The motions to amend and the motion to seal
are granted.   (D.I. 10, 12, 13, 14)   Plaintiff may proceed
against the remaining defendant.

✗      IT IS FURTHER ORDERED that:

     1.   The clerk of the court shall cause a copy of this order
to be mailed to plaintiff.

     2.   Pursuant to Fed. R. Civ. P. 4(c)(2) and (d)(2),
plaintiff shall complete and return to the clerk of the court an
**original** "U.S. Marshal-285" form for **the remaining defendant**
**Correctional Medical Systems**, as well as for the Attorney General
of the State of Delaware, 820 N. FRENCH STREET, WILMINGTON,
DELAWARE, 19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(c).

Plaintiff has provided the court with copies of the complaint

(D.I. 2) for service upon the remaining defendant and the

attorney general. Plaintiff shall also provide the court with

copies of the amended complaint with exhibits (D.I.8), motions to

amend/correct with exhibits (D.I. 10, 12, 14) for service upon

the remaining defendant and the attorney general. Plaintiff is

notified that the United States Marshal will not serve the

complaint until all "U.S. Marshal 285" forms have been received

by the clerk of the court. Failure to provide the "U.S. Marshal

285" forms for the remaining defendant and the attorney general

within 120 days of this order may result in the complaint being

dismissed or defendant being dismissed pursuant to Federal Rule

of Civil Procedure 4(m).

3.    Upon receipt of the form(s) required by paragraph 2

above, the United States Marshal shall forthwith serve a copy of

the complaint and the amended complaint (D.I. 2, 8), the motions

to amend/correct (D.I. 10, 12, 14), this order, a "Notice of

Lawsuit" form, the filing fee order(s), and a "Return of Waiver"

form upon the defendant(s) so identified in each 285 form.

4.    Within **thirty (30) days** from the date that the "Notice

of Lawsuit" and "Return of Waiver" forms are sent, if an executed

"Waiver of Service of Summons" form has not been received from a

defendant, the United States Marshal shall personally serve said

-6-

defendant(s) pursuant to Fed. R. Civ. P. 4(c)(2) and said defendant(s) shall be required to bear the cost related to such service, unless good cause is shown for failure to sign and return the waiver.

5.  Pursuant to Fed. R. Civ. P. 4(d)(3), a defendant who, before being served with process timely returns a waiver as requested, is required to answer or otherwise respond to the complaint within **sixty (60) days** from the date upon which the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form are sent. If a defendant responds by way of a motion, said motion shall be accompanied by a brief or a memorandum of points and authorities and any supporting affidavits.

6.  No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7.  **NOTE: \*\*\*** When an amended complaint is filed prior to service, the court will **VACATE** all previous service orders entered, and service **will not take place.** An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). **\*\*\***

8.  **NOTE: \*\*\*** Discovery motions and motions for appointment

-7-

of counsel filed prior to service will be dismissed without

prejudice, with leave to refile following service. ***

UNITED STATES DISTRICT JUDGE