**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANGELO CLARK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 06-465 - SLR |
| | : | |
| REGIONAL MEDICAL FIRST | : | TRIAL BY JURY OF |
| CORRECTIONAL, | : | TWELVE DEMANDED |
| MANAGER ANGELA WILSON, AND | : | |
| CORRECTIONAL MEDICAL SERVICES, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT CORRECTIONAL MEDICAL SERVICE, INC.'S REPLY BRIEF IN
SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT AND
MOTION TO DISMISS
(RELATED DOCKET #72)**

COMES NOW, Defendant, Correctional Medical Service, Inc., (hereinafter "CMS) to

hereby reply to the Response Brief filed by Plaintiff on May 23, 2008 (DI 106) and May 28,

2008 (DI 108) and in support thereof states as follows:

1.      Summary judgment is proper "if pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(c ). The

initial burden of showing that there is no genuine issue of material fact is on the movant.

Celotex v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2568, 91 L. Ed.2d 265 (1986). Once the

movant has established this burden, the non-movant must "set out specific facts showing a

genuine issue for trial". Fed. R. Civ. P. 56(e)(2). The non-movant must present actual evidence

that raises a genuine issue of material fact and may not rely on mere allegations. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A mere

scintilla of evidence in support of the non-movant's position is not sufficient to create a genuine issue of material fact. Id. at 251-252. Rather, the proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-movant. Id.

2.    Neither of Plaintiff's responses (DI 106 and 108) to the Motion for Summary Judgment and Motion to Dismiss (DI 72- hereinafter the "Motion") contain any "specific facts" other than Plaintiff's own allegations and belief that CMS has failed to provide adequate care to Plaintiff for the treatment of his medical conditions, including, but not limited to schizophrenia, bi-polar disease, auditory hallucinations, paranoia, headaches, nose bleeds, hypertension, cardiac distress, chest pain, stomach "knots", indigestion, intestinal complaints, and numerous other complaints while incarcerated at DCC.

3.    Plaintiff's mere use of accusatory words such as "cruel and unusual punishment", "torture" and " treat me like an experiment or exibit (sic) or research" (DI 8) (DI 17, Ex. 3) (DI 108, ¶3), "the nurses….are trying to poison me" (DI 10, Medical Grievance 2/6/06) throughout his pleadings and the many grievances and sick calls that he has submitted as attachments to his pleadings are "mere allegations" and/or perceptions of Plaintiff are not corroborated by the Exhibits submitted by Defendants in the Motion (DI 72, Exhibits A, B, C) and medical records and affidavits already on file with the Court in Defendant's Response to the Motion for Preliminary Injunction (DI 57 & 58, Exhibits A- K) that was filed on July 30, 2007 and this Reply. Defendants hereby incorporate DI 57 & 58 and Exhibits thereto by reference as it contains a concise and orderly rendition and explanation with supporting affidavits of the treatment Plaintiff has received in connection with his medical conditions while at DCC.[1]

---

[1] The Motion only contains specific excerpts from Plaintiff's medical records which Defendants contend contain sufficient information along with the contents of DI 72 and 57 & 58 for the Court to rule on the request for summary

Plaintiff's mere allegations are not sufficient to argue that a genuine issue of material fact exists

in the present case alleging a violation of his Eight Amendment Right pursuant to 42 U.S.C.

§1983.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  *See also*, Pitt v. Hayman, 2008 US

Dist. LEXIS 31650 (U.S.D.C. NJ April 16, 2008) (See **Exhibit "A"** attached).

      4.    Of significance in considering the Motion for Summary Judgment is the

Affidavit of Anthony Cannuli, M.D. dated July 30, 2007 and attached as an Exhibit to the

Response to the Motion for Preliminary Injunction, wherein he states "I have not seen any

evidence that Mr. Clark is being tortured mentally or physically.  However, it is not unusual for a

person with Mr. Clark's condition of paranoid schizophrenia and bi-polar disorder to believe that

various people intend harm for them".  (DI 57 & 58, Ex. B, pg 3, ¶14).

      5.    The allegations in Plaintiff's complaint and all amendments thereto

contain either no cause of action at all or Plaintiff's perceptions of cruel and unusual punishment

and/or negligence that are not supported by the medical records, as follows:

      a.    The **original complaint** (July 31, 2006) fails to contain any cause of

action (of any nature) in that it only complains that the medication he was prescribed (Zyprexa)

causes nerve damage and memory loss and that he never sees a psychiatrist about his meds.  (DI

2, ¶IV, 1 & 2).

      b.    The **first amended complaint** (October 10, 2006) contains 26 pages of

medical grievances regarding his perception of  the inadequacies in the medical care he was

receiving in prison  (DI 10).  In particular he claims that on 2/09/06 the Nurses should be

---

judgment.  However, if the Court would like Defendant to submit Plaintiff's entire medical file it has on hand (under
seal),  Defendant will do so in accordance with the any request of the Court.

"vindicated of there (sic) carreers (sic) for their negligence and wrong doing of me…" (DI 10, Grievance dated 2/9/06).

c.      The **second amended complaint** (October 23, 2006) appears to be only a letter to the court discussing exhibits # 1 & 2 (DI 12).

d.      The **third amended complaint** (October 27, 2006) appears to be a request to seal the documents and contains no allegations against CMS.  (DI 13).

e.      The **fourth amended complaint** (November 1, 2006)  contains the allegations that the "meds, that is making me have side effects" and claims that he received 2 doses of a medication, when he was only supposed to get 1" (DI 14 & 15, ¶2 & 3).

f.      The **fifth amended complaint** (December 18, 2006) contains grievances that he was awoken by a nurse and she gave him the wrong dosage of ativan in the morning (10/11/06); that he was given 6 or 7 extra pills that he normally didn't take (10/28/06);  that a nurse ignored him when he asked about his "nitro" patch (10/20/06); and that medical staff "conned" him and told him he only had 1 heart attack when he claims to have had 2 heart attacks.  (DI 17)

g.      The **sixth amended complaint** (May 29, 2007) states that he was given Hepatitis C by a couple of nurses working for CMS while he was going through heart disorders, etc.; was placed in SHU for no reason other than because he was manic (10/8/06);  a sick call requesting to be seen by a doctor after he was placed in the infirmary for cutting himself (11/24/06);  a sick call complaining of pains in his body and a request to have his eyes checked (3/6/05 - Gander Hill); a sick call for pain (8/11/05- Gander Hill).  (DI 30 & 31)

6.      None of the allegations contained in ¶5 a-g above, when taken in a light most favorable to Plaintiff amount to the cruel and unusual punishment standards set forth by Estelle v Gamble and other relevant case law as previously stated in the Motion (DI 72).    The complaints contain mere allegations, without specificity and without expert opinion supporting said claims,  and therefore do not support a claim for systemic deliberate indifference of cruel and unusual punishment, which is the nature of this action.  Anderson v. Liberty Lobby, 447 U.S. @ 251-252.  In Pitt v. Hayman, 2008 US Dist. LEXIS at 31650 (U.S.D.C. NJ April 16, 2008) the Court granted summary judgment in favor of the medical provider (CMS) when it found that the inmates allegations essentially amounted to requests for alternative treatment; self-diagnosis; and arguments that CMS failed to allow the inmate to see a specialist.  Id. at *20.  The Court held that based upon the medical records it was evident that the inmate received adequate medical care and, at most, the claims asserted amounted to negligence, which did not rise to the level of offending "evolving standards of decency".  Id.

7.      Furthermore, Plaintiff's responses to the Motion for Summary Judgment (DI 106 and 108) contain language that indicate that the basis for Plaintiff's complaint against CMS do not lie in  "cruel and unusual punishment" under the Eight Amendment.  Specifically, DI 106 says "as a result of the vendor's malpractice issues"…(DI 106, ¶3).  In DI 108, Plaintiff states "in connection with the negligence of the medical vendor's"; "on misdiagnosing me of several faketicious (sic) illnesses" (DI 108, ¶1); and the "gross negligence, with reckless inadequate examinations" (DI 108, ¶2), would all indicate that Plaintiff is dissatisfied with the medical decisions made by CMS doctors during the course of treatment.  Plaintiff has yet to provide evidence, other than his own untrained medical opinion and beliefs, that the treatment

rendered by CMS, and all the complications associated with his long-term mental illness of schizophrenia, bi-polar disorder,  have landed him medically where he finds himself today.

8.     It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); *see also*, White v. Napoleon, 897 F.2d 103, 108 (3d Cir.1990) (concluding that mere medical malpractice cannot give rise to a violation of the Eighth Amendment). Only "unnecessary and wanton infliction of pain" or "deliberate indifference to the serious medical needs" of prisoners is sufficiently egregious to rise to the level of a constitutional violation.  White, 897 F.2d at 108-09 (*quoting* Estelle v. Gamble, 429 U.S. 97, 103, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)). Jetter v. Beard, 130 Fed. Appx. 523, 526 (3d Cir. Pa. 2005).

9.     Given Plaintiff's long history of mental illness (over 30 years), the documented medical history of non-compliance with his medications (DI 57 & 58); and the environmental conditions of being incarcerated and the inherent stress related thereto, Plaintiff will not be able to prove and has not provided sufficient evidence that CMS is the cause of all of his problems alleged in this case.  It is evident from Plaintiff's sick calls and medical grievances that the crux of this case is that Plaintiff  is not happy with the side effects of his psychotropic medications.  However, it is the medical opinion of Dr. Cannulli that the medication he was prescribed was "necessary for varying somatic[2] and non-somatic complaints" (DI 57 & 58, Ex.

---

[2] Of, relating to, or affecting the body, especially as distinguished from a body part, the mind, or the environment; corporeal or physical; Of or relating to the wall of the body cavity, especially as distinguished from the head, limbs, or viscera.; Relating to the vegetative, as distinguished from the generative, functions; of or relating to a somatic cell or the somatoplasm.. The American Heritage® Stedman's Medical Dictionary (Copyright 2002, 2001, 1995)

B, ¶15, pg 3).  Additionally, Dr. Cannuli's states, "it is not unusual for patients with schizophrenia, paranoia, auditory hallucinations, and bipolar disorders to have varying degrees of mental disabilities due to factors such as medication efficacy and potency, medication compliance, and environmental factors".  (DI 57 & 58, Ex. B, ¶16, pg 3).  Plaintiff has put forth no credible evidence disputing these important factors.   It would appear that Plaintiff wants the benefit of being treated for his mental illness without accepting the side effects associated with the drugs necessary to control the disease.

   10.    Based upon all of the above, the legal arguments set forth in DI 72 and related exhibits, and DI 57 & 58 and related exhibits, and the fact that Plaintiff has failed to submit any reliable or credible evidence (other than his own non-medical opinions and grievances) which would support his contention of cruel and unusual punishment, and therefore CMS is entitled to summary judgment as a matter of law.

   WHEREFORE, Plaintiff respectfully requests that summary judgment be granted in its favor and the case dismissed as a matter of law.

          /s/  Eileen M. Ford
          Eileen M. Ford, Esquire (ID # 2870)
          Megan T. Mantzavinos, Esquire (ID #3802)
          Marks, O'Neill, O'Brien & Courtney, P.C.
          913 Market Street, Suite 800
          Wilmington, DE  19801
          (302) 658-6538
          Attorney for Defendant
Date: June 26, 2008          Correctional Medical Services

EXHIBIT "A"

LEXSEE 2008 US DIST LEXIS 31650

**DARYLE L. PITTS, Plaintiff, v. GEORGE W. HAYMAN, et al., Defendants.**

**CIVIL ACTION NO. 07-2256 (MLC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2008 U.S. Dist. LEXIS 31650*

**April 16, 2008, Decided**
**April 16, 2008, Filed**

**NOTICE:**   NOT FOR PUBLICATION

**COUNSEL:**  [*1] DARYLE L. PITTS, Plaintiff, Pro se, TRENTON, NJ.

For GEORGE W. HAYMAN, Acting Commissioner, N.J. Department of Corrections, RONALD H. CATHEL, Administrator, N.J. State Prison, MICHELLE R. RICCI, Associate Administrator, N.J. State Prison, DONALD MEE, JR, Assistant Superintendent, N.J. State Prison, Defendants: SARAH BRIE CAMPBELL, LEAD ATTORNEY, OFFICE OF THE NJ ATTORNEY GENERAL, DEPARTMENT OF LAW & PUBLIC SAFETY, RJ HUGHES JUSTICE COMPLEX, TRENTON, NJ.

For ALLAN B. MARTIN, Physician, CMS, Inc., J. BETHEA, Nurse Ombudsman, CMS, Inc., LAWRENCE DONKOR, Physician, CMS, Inc., GRACE MELENDEZ, Physician, CMS, Inc., ARLENE TINKER, Physician, CMS, Inc., CORRECTIONAL MEDICAL SERVICES, INC., CMS Inc., Health Care Provider, N.J. State Prison, Defendants: FRANCES WANG DEVENEY, LEAD ATTORNEY, MARKS, O'NEILL, O'BRIEN & COURTNEY, PC, PENNSAUKEN, NJ.

**JUDGES:** MARY L. COOPER, United States District Judge.

**OPINION BY:** MARY L. COOPER

**OPINION**

**MEMORANDUM OPINION**

**COOPER, District Judge**

*Pro se* plaintiff, Daryle L. Pitts ("Pitts"), commenced this action on May 14, 2007 alleging, *inter alia*, that medical and administrative personnel at New Jersey State Prison ("Prison") where he is currently incarcerated violated his civil rights under *42 U.S.C. § ("Section") 1983*. [*2] (*See* dkt. entry no. 1, Compl.) Pitts asserts that (1) the Court should issue a judgment declaring that the defendants violated, and continue to violate, his rights under the *Eighth* and *Fourteenth Amendments to the United States Constitution* (count 1), (2) the Court should issue an injunction directing the defendants to arrange for him to receive specific medical treatments (also count 1), (3) the defendants were deliberately indifferent to his serious medical needs "by allowing staffing levels in the clinic at [the Prison] to undermine its treatment protocols" (count 2), (4) the defendants negligently failed to refer Pitts to medical specialists for evaluation and treatment of his various medical conditions (count 3), (5) he suffers "great anguish and pain and anguish of mind" as a result of the defendants' willful and wanton conduct, which includes inappropriate staffing and record keeping at the Prison's medical clinic (count 4), and (6) defendants Arlene Tinker, Lawrence Donkor, Allan B. Martin, and Grace Melendez performed inadequate and inappropriate evaluations of Pitts's medical conditions "with knowing negligence" and failed to accurately report his conditions [*3] (count 5). (*Id.* at 30-37.) Thus, Pitts seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*See id.*)

Defendants Correctional Medical Services, Inc. ("CMS"), Allan B. Martin, J. Bethea, Lawrence Donkor, Grace Melendez, and Arlene Tinker (collectively, the "CMS Defendants") move to dismiss the complaint insofar as asserted against them pursuant to *Federal Rule of Civil Procedure ("Rule") 12(b)(6)*. (Dkt. entry no. 17.) Further, defendants George W. Hayman, Ronald H. Cathel, Michelle R. Ricci, and Donald Mee, who are each current or former employees of the New Jersey Department of Corrections (collectively, the "NJDOC Defendants"), separately move to dismiss the complaint insofar as asserted against them pursuant to *Rule 12(b)(6)*, or, in the alternative, for summary judgment in

their favor pursuant to *Rule 56*. (Dkt. entry no. 20.) The Court, for the reasons stated herein, will (1) grant the part of the CMS Defendants' motion seeking dismissal of Pitts's federal claims, (2) grant the part of the NJDOC Defendants' separate motion seeking dismissal of Pitts's federal claims, (3) dismiss all of the federal claims with prejudice, and (4) dismiss Pitts's state [*4] law claims without prejudice to reinstate in state court.

## BACKGROUND

Pitts contends that he suffers or has previously suffered while incarcerated from the following medical conditions: (1) hepatitis C, genotype 1b, (2) cardiovascular disease, (3) middle back and spinal column abnormalities, (4) Parkinson's Disease, (5) hearing impairment, (6) nodules on his skin, and (7) neurological abnormalities. (*See* Compl., at 13-30.) Pitts acknowledges that he has received some medical attention with respect to these conditions. (*See id.*) Specifically, in the complaint, Pitts notes that (1) he was tested for hepatitis C in April 1993, (2) in connection with his hepatitis C, he was given twelve liver function blood tests over a period of twenty years (from 1985 through 2004) in order to measure his levels of bilirubin, alanine transamine, and aspartate transamine, (3) his Prison medical records properly indicate that he (a) showed evidence of a pulmonary embolism on November 22, 1986, (b) received an echocardiogram on June 11, 1993 that showed mitral valve prolapse, and (c) showed evidence of hypertension cardiovascular disease and other cardiovascular conditions on August 21, 2001, (4) he had an [*5] echocardiogram on January 4, 2004, which "reported sinus bradycardia [sic] possible anteroseptal infarct", (5) he was taken to St. Francis Medical Center on December 1, 2006 after his legs collapsed, (6) a liver biopsy performed on February 8, 2006 again confirmed that he has hepatitis C, genotype 1b, (7) he met with a radiologist on August 23, 2001 and again on January 13, 2002, (8) he met with a neurologist in 2004 or 2005, (9) he was diagnosed with a hearing deficit requiring Binaural type amplification, and thus, was given hearing aids, and (10) a CAT scan of his lumbar spine was performed on February 6, 2007. (*Id.* at 14, 16-19, 22-24, 26; *see* CMS Defs. Br., at 2 (listing treatment Pitts received); NJDOC Defs. Br., at 1-13 (providing detailed list of treatments Pitts received and grievances he filed during his incarceration).) Nevertheless, Pitts argues that he:

has been plagued with chronic pain and deteriorating health conditions for several years that have been left essentially untreated for diagnosed conditions, and the delay in treatment that was provided, fell far below community medical standards causing further extreme distress and having to endure and be tormented unnecessarily, [*6] resulting in deterioration of health and uncontrolled suffering.

(Pitts Br. in Opp. to NJDOC Defs. Mot., at 1.)

## I. Legal Standards

### A. Motion to Dismiss Standard

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P. 12(b)(6)*. On a motion to dismiss, the Court generally must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 134 (3d Cir. 2004)*; *Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001)*. However, the Court need not credit bald assertions or legal conclusions alleged in the complaint. *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)*; *Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)*. The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)". *Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)*.

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the [*7] pleadings." *In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426*. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under *Rule 56*. *See Fed.R.Civ.P. 12(b)*. An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. *Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004)*.

### B. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. The movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. Once the

[*8] movant has met this prima facie burden, the non-movant must "set out specific facts showing a genuine issue for trial." *Fed.R.Civ.P. 56(e)(2).* A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).*

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).* At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249.* Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a *Rule 56(c)* motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id. at 252.* "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement [*9] is that there be no *genuine* issue of *material* fact." *Id. at 247-48* (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. *Id. at 248.* "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id. at 249-50* (internal citations omitted).

## II. Legal Standards Applied Here

### A. Pitts's Federal Law Claims

Pitts, in count 1, requests that the Court issue (1) a judgment declaring that the defendants violated and continue to violate his rights under the *Eighth and Fourteenth Amendments to the United States Constitution* "and Federal Statutory Law", and (2) an injunction directing the defendants to immediately arrange for him to receive certain medical testing and treatment. (Compl., at 31-32.) Pitts states that he is entitled to damages "in an amount sufficient to compensate him for his anguish, pain and mental anguish suffered by him due to the deliberate indifference and objectively unreasonableness and intentional misconduct of defendants". (*Id.* at 32.) [*10] Similarly, in count 2, Pitts asserts that the defendants were deliberately indifferent to his medical needs "by allowing staffing levels in the clinic at [the Prison] to undermine its treatment protocols." (*Id.*) Thus, Pitts contends that as a result of the defendants' deliberate indif-

ference, he "is suffering and suffered great pain and anguish of mind" and was denied his constitutional rights under the *Eighth and Fourteenth Amendments, Section 1983,* Title II of the Americans with Disabilities Act, *42 U.S.C. § 12101 et seq.* ("ADA"), and Section 504 of the Rehabilitation Act, *29 U.S.C. § 794.* (*Id.*)

### 1. *Section 1983* and the *Eighth Amendment*

A plaintiff asserting civil rights violations under *Section 1983* must establish that the defendant acted under color of state law to deprive the plaintiff of a right secured by the United States Constitution or the laws of the United States. *Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983* does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws. *Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)* (noting that *Section 1983* does not, by itself, create rights, [*11] but instead provides remedies for deprivation of rights established by Constitution or other federal laws). "The color of state law element is a threshold issue; there is no liability under *[Section] 1983* for those not acting under color of law." *Groman, 47 F.3d at 638.* Here, the CMS Defendants, who were responsible for providing medical services to the Prison's inmates, and the NJDOC Defendants, who are each current or former employees of the New Jersey Department of Corrections, were clearly acting under color of state law at all times relevant to the complaint.

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated. *See Groman, 47 F.3d at 633.* Further, officials may be liable under *Section 1983* for the acts of those over whom they have supervisory responsibility. However, civil rights liability cannot be predicated solely on the doctrine of *respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).* Instead, personal involvement in the alleged wrong-doing must be shown. *Id.*

Pitts alleges that, *inter alia,* the defendants violated his *Eighth Amendment* right to be free [*12] from cruel and unusual punishment by acting with deliberate indifference to his serious medical needs and failing to provide him with proper medical care. (*See generally* Compl.) Deliberate indifference to serious medical needs of prisoners violates the *Eighth Amendment,* which is applicable to the states through the *Fourteenth Amendment,* because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).* Accordingly, to succeed on an *Eighth Amendment* medical-care claim, an inmate must establish that (1) he has a serious medical need, and (2) prison officials were deliberately indiffer-

ent to such medical need. *Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)*. A medical need is considered serious if it is one a physician would diagnose as requiring treatment or one that a lay person would easily recognize as needing a doctor's attention. *Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)*. Further, if denial or delay causes "unnecessary and wanton infliction of pain", a life-long handicap, or permanent loss, the medical need is considered serious. *Id.*

"Where prison [*13] authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'" *Lanzaro, 834 F.2d at 343* (internal citations omitted). Deliberate indifference is also manifest when prison officials "erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." *See id. at 347* (internal quotations and citations omitted). However, claims of negligence or malpractice are not sufficient to establish deliberate indifference. *Rouse, 182 F.3d at 197; see White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990)* ("Mere medical malpractice cannot give rise to a violation of the *Eighth Amendment*."). Thus, in order to state a cognizable claim for failure to provide medical care in violation of the *Eighth Amendment*, a prisoner must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency". *Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*.

The Court concludes, after accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of Pitts, that [*14] Pitts has the following serious medical needs requiring treatment: (1) hepatitis C, genotype 1b; (2) cardiovascular disease; (3) middle back and spinal column abnormalities; (4) Parkinson's Disease; and (5) hearing impairment. (*See* Compl., at 13-30.) *Lanzaro, 834 F.2d at 347.* [1] Nevertheless, Pitts has failed to show that the NJDOC Defendants deprived him of a constitutional right. *See Groman, 47 F.3d at 633.*

> 1  The Court also concludes that Pitts has not sufficiently alleged or established that either the "nodules" on his skin or his neurological "abnormalities" constitute serious medical conditions. Pitts has not adequately stated that such impairments would be easily recognized as requiring medical treatment. *See Lanzaro, 834 F.2d at 347.*

Pitts has not alleged that either (a) George W. Hayman, the New Jersey Department of Corrections commissioner, (b) Ronald H. Cathel, the former Prison administrator, (c) Michelle R. Ricci, the acting Prison administrator, or (d) Donald Mee, the former assistant superintendent of the Prison, had any personal involvement

in his medical treatment or the diagnosis of his various medical conditions. (*See* NJDOC Defs. Br., at 19-22.) Instead, Pitts generally [*15] alleges that the NJDOC Defendants should have been aware of his medical conditions and assisted him in obtaining reasonable and adequate medical care. (*See generally,* Compl.) However, Pitts has not suggested in either the complaint or his various briefs that any of the NJDOC Defendants (1) directed the actions of the medical personnel responsible with respect to his treatment, or (2) knew that the CMS Defendants or members of the Prison staff were acting with deliberate indifference to his serious medical needs, and acquiesced to such conduct. *Jetter v. Beard, 130 Fed. Appx. 523, 526 (3d Cir. 2005)* (stating that to state a *Section 1983* claim against supervisor defendants, the plaintiff must allege that such defendants directed the actions of those who committed the wrongdoing, or knew of such actions and acquiesced to them).

That the NJDOC Defendants did not ensure that the CMS Defendants were appropriately and adequately responding to Pitts's requests for medical attention and specific treatments does not constitute deliberate indifference to medical needs. It is reasonable for prison administrators, who are aware that a particular inmate is receiving medical treatment from the prison [*16] medical staff, to defer to the treatment and diagnosis decisions of such staff members even after receiving complaints from the inmate suggesting that he disagrees with the treatment decisions or believes them to be inadequate. (*See* Pitts Br. in Opp. to NJDOC Defs. Mot., at 12 (noting that NJDOC Defendants were repeatedly advised of the constitutional violations through Pitts's remedy forms, but choose to ignore such violations).) *Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)* (holding that prison administrators could not "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"). The NJDOC Defendants may have had general supervisory authority over the CMS Defendants and other members of the Prison staff, but they were not directly involved in Pitt's medical treatment and did not participate in making the diagnosis and treatment decisions or cause the delays that underlie the complaint. Therefore, Pitts's *Eighth Amendment* deliberate indifference claims must be dismissed insofar as asserted against the NJDOC Defendants because they are based solely on these defendants' [*17] supervisory roles over the Prison medical staff, and thus, are predicated solely on the doctrine of *respondeat superior. See Rode, 845 F.2d at 1207* (noting that *Section 1983* liability cannot be predicated on the doctrine of *respondeat superior,* but instead, personal involvement in the alleged wrong-doing must be shown); *Durmer, 991 F.2d at 69* (holding that prison administrators were not "deliberately indifferent" by failing to respond to

complaints of a prisoner being treated by a prison medical doctor); *Beard, 130 Fed. Appx. at 526* (dismissing *Section 1983* claims against supervisory defendants because the plaintiff did not show that they had any personal involvement in his medical treatment).

The Court also finds that Pitts's *Eighth Amendment* claims should be dismissed insofar as asserted against the CMS Defendants. Although the complaint describes a litany of grievances Pitts has expressed regarding his medical treatment at the Prison, it also lists many instances where he received testing and treatment for his various conditions. Specifically, Pitts acknowledges that (1) he was tested for hepatitis C in April 1993, (2) in connection with his hepatitis C, he was given twelve liver [*18] function blood tests over a period of twenty years (from 1985 through 2004) in order to measure his levels of bilirubin, alanine transamine, and aspartate transamine, (3) his Prison medical records properly note that he showed evidence of a pulmonary embolism on November 22, 1986, received an echocardiogram on June 11, 1993 that showed mitral valve prolapse, and showed evidence of hypertenstion cardiovascular disease and other cardiovascular conditions on August 21, 2001, (4) he had an echocardiogram on January 4, 2004, which "reported sinus bradycadia [sic] possible anteroseptal infarct", (5) he was taken to St. Francis Medical Center on December 1, 2006 after his legs collapsed, (6) a liver biopsy performed on February 8, 2006 again confirmed that he has hepatitis C, genotype 1b, (7) he met with a radiologist on August 23, 2001 and again on January 13, 2002, (8) he met with a neurologist in 2004 or 2005, (9) he was diagnosed with a hearing deficit requiring Binaural type amplification, and thus, was given hearing aids, and (10) a CAT scan of his lumbar spine was performed on February 6, 2007. (Compl., at 14, 16-19, 22-24, 26; *see* CMS Defs. Br., at 2 (listing treatment Pitts received); [*19] NJDOC Defs. Br., at 1-13 (providing detailed list of treatments Pitts received and grievances he filed during his incarceration).)

The CMS Defendants also submitted a letter to this Court noting that Pitts (1) does not meet the guidelines for the treatment he seeks for his hepatitis C, but is entitled to have another liver biopsy in two to five years, (2) had an electrocardiogram on July 15, 2007, which reported "normal" results, (3) had chest x-rays in October 2004 and February 2005, which did not reveal any pulmonary nodule, (4) had a lumbar spine and cervical spine MRI on September 11, 2007, (5) receives treatment for his Parkinson's Disease, (6) had an x-ray of his head on October 2, 2006 that showed several metallic densities, (7) underwent a CAT scan of his head on November 27, 2006, which reported "that this was a normal examination", and (8) had an x-ray of his head on January 18, 2007, which showed no medical problems. (Dkt. entry

no. 18, 11-14-07 Deveney Letter.) Accordingly, the CMS Defendants may not have permitted Pitts to receive all medical testing and treatments he requested, but even accepting all of Pitts's allegations as true, it does not appear that he was exposed [*20] to undue suffering or the threat of tangible residual injury. *See Lanzaro, 834 F.2d at 343*. In contrast, it appears that he is receiving consistent testing and treatment.

Pitts's allegations against the CMS Defendants essentially amount to (1) statements that alternative and better treatments were available for his medical conditions, (2) self-diagnosis, and (3) arguments that the CMS Defendants' failure to allow him to see all specialists and receive all treatments and procedures he desired violated his constitutional rights. The Court disagrees, however, and concludes that Pitts has received adequate medical care with respect to his conditions. Any perceived delays in his receipt of medical diagnoses and treatments, and the defendants' alleged refusal to allow Pitts to have additional testing and treatments, may, at most, constitute negligence, but such conduct does not rise to the level of offending "evolving standards of decency". *Estelle, 429 U.S. at 106*. Therefore, the Court concludes that dismissal of Pitts's *Eighth Amendment* claims against the CMS Defendants is appropriate here.[2]

> 2 Pitts asserts that the "complaint alleges a pattern of denying, failing, discarding, not providing [*21] adequate medical attention." (Pitts Br. in Opp. to NJDOC Defs. Mot., at 10.) He further asserts that (1) the NJDOC Defendants each had policymaking authority, (2) his allegations infer "deliberate indifference" or "tacit authorization" by the NJDOC Defendants, which is sufficient to establish an official custom or practice, and (3) although official liability cannot be predicated on the doctrine of *respondeat superior,* the NJDOC Defendants may be liable for a practice or custom under *Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).* (*Id.* at 10, 12.) However, Monell simply provides that local government units may be sued directly under *Section 1983* if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell, 436 U.S. at 690.* There are no municipal government units named as defendants here. In any event, under *Monell,* there can be no municipal liability if the Court determines that none of the individual defendants violated the plaintiff's constitutional rights. *See Deninno v. Mun. of Penn Hills, No. 07-1550, 2008 U.S. App. LEXIS 5518, at *12 (3d Cir. March 14, 2008);* [*22] *Bornstad v. Honey Brook Twp., 211 Fed.*

*Appx. 118, 126 (3d Cir. 2007).* (concluding that because the court found that there was no violation of plaintiff's constitutional rights, there was no basis for imposing municipal liability).

## 2. The *Fourteenth Amendment*

The *Due Process Clause of the Fourteenth Amendment* provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law." *U.S. Const. amend. XIV.* The *Due Process Clause* protects individuals against two types of government action.

> So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty". When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as procedural due process.

*United States v. Salerno, 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)* (internal cites omitted) (discussing *Fifth Amendment's due process clause,* which contains identical language). To prevail on a substantive due process claim, the plaintiff must demonstrate that he or [*23] she has a "fundamental" property interest or right under the United States Constitution. *Hill v. Bor. of Kutztown, 455 F.3d 225, 235 (3d Cir. 2006).* In analyzing a procedural due process claim, the Court must first determine whether the plaintiff was deprived of a liberty or property interest protected by due process. *Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); see Atkins v. Parker, 472 U.S. 115, 128, 105 S. Ct. 2520, 86 L. Ed. 2d 81 (1985).*

Liberty interests protected by the *Due Process Clause of the Fourteenth Amendment* may arise under the clause itself, a state statute, or a regulation. *Muhammad v. Fauver, No. 79-3121, 1989 U.S. Dist. LEXIS 7324, at *43 (D.N.J. July 28, 1989).* The Court, if concluding that the plaintiff was deprived of a liberty or property interest, must determine what process is necessary. *Logan, 455 U.S. at 428; see Atkins, 472 U.S. at 128.* Procedural due process is a flexible requirement and "calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)* (cite omitted).

Pitts asserts that he has a liberty interest in "the right to due process, equal protection, medical care and to be free from unnecessary and wanton infliction [*24] of pain." (Pitts Br. in Opp. to NJDOC Defs. Mot., at 24.) Pitts further asserts that the "defendants have denied him his due process rights by refusing to provide necessary timely adequate care and by refusing to adopt a process to address these concerns." (*Id.*) Accordingly, Pitts contends that he has stated a claim for violation of his rights under the *Fourteenth Amendment* because the defendants' unreasonable delay in providing him with medical treatment and refusal to provide him with requested medical care and specialty referrals "may be construed as a deliberate decision which is not reasonably related to any proper governmental objective, and thus it may deprive [him] of his liberty rights without due process." (*Id.*)

To the extent Pitts asserts a substantive due process claim against the defendants, the Court finds that such claim fails because Pitts has not alleged that the defendants engaged in any conduct that was so egregious that it "shocks the conscience" of the Court or "interferes with rights implicit in the concept of ordered liberty." *See Salerno, 481 U.S. at 746.* Moreover, an inmate does not have an independent constitutional right to outside medical care or treatments [*25] that are additional or supplemental to the care provided by the prison staff. *Roberts v. Spalding, 783 F.2d 867, 870 (9th Cir. 1986).* Thus, Pitts does not have a fundamental interest or right to receive medical treatments, undergo medical procedures, or consult specialists outside the Prison, which is entitled to substantive due process protection. *See Hill, 455 F.3d at 235.*

This Court also finds that Pitts does not have a viable procedural due process claim against the defendants because he has not demonstrated that he has any property interest protected by due process. Specifically, inmates do not have a constitutional right to receive all types of requested medical attention, and thus, Pitts's specific requests for medical treatments or specialist referrals did not constitute property interests protected by the *Fourteenth Amendment. See Sammons v. Allenbrand, No. 92-3373, 1993 U.S. App. LEXIS 2068, at *3 (10th Cir. 1993)* (noting that "[i]nmates do not have a constitutional right to a physician's attention for every submitted medical request" and determining that the plaintiff inmate could not allege a procedural due process claim simply because his medical treatment requests were [*26] screened by the prison staff, which determined whether the inmate required treatment by a physician). Therefore, the Court will grant the NJDOC Defendants' and CMS Defendants' separate motions to dismiss with respect to Pitts's *Fourteenth Amendment* claims. [3]

> 3   To the extent Pitts attempts to state a claim under the *Fourteenth Amendment's equal protection clause,* such claim must also fail. To state a

claim for violation of the *Fourteenth Amendment's equal protection clause*, a plaintiff must demonstrate "that an official's actions were (1) discriminatory in effect and (2) motivated by discriminatory purposes." *Martino v. County of Camden*, No. 04-5300, 2005 U.S. Dist. LEXIS 15622, at *41 (D.N.J. July 26, 2005). To show discriminatory effect, a plaintiff must prove that he or she is a member of a protected class and was treated differently than similarly situated individuals, who are members of an unprotected class. *Id.; see Pollack v. City of Phila.*, No. 06-4089, 2007 U.S. Dist. LEXIS 11624, at *11 (E.D. Pa. Feb. 16, 2007). Pitts has not identified any protected class in which he is a member. Further, he has not asserted that he was treated differently than nonmembers of such class. Instead, [*27] he simply alleges that he was denied adequate medical treatment. Such allegations are insufficient to state an equal protection claim. Accordingly, the Court will grant the separate motions to the extent that they seek dismissal of Pitts's claims, if any, under the *equal protection clause of the Fourteenth Amendment*.

### 3. The ADA and *Section 504* of the Rehabilitation Act

The ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *42 U.S.C. § 12132*. Similarly, Section 504 of the Rehabilitation Act provides that:

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

*29 U.S.C. § 794.*

Neither the NJDOC Defendants nor the individual CMS Defendants receive [*28] federal financial assistance, and thus, they are not subject to *Section 504* of the Rehabilitation Act. *See A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to *Section 504* against recipients of federal financial assistance, but not against individuals."); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (stat-

ing that because the individual defendants did not receive federal aid, the plaintiff could not state a claim against them under *Section 504* of the Rehabilitation Act); *see also Millington v. Temple Univ. Sch. of Dentistry*, No. 06-4796, 2008 U.S. App. LEXIS 1291, at *7 n.3 (3d Cir. Jan. 23, 2008) (noting that the plaintiff must show that the defendant received financial assistance to establish a claim under the Rehabilitation Act). It is irrelevant whether the New Jersey Department of Corrections, the employer or former employer of each of the NJDOC Defendants, receives federal financial assistance because it is not a named defendant in this action. However, Pitts alleges that CMS receives federal funding and the CMS Defendants have not rebutted that allegation. (*See* Compl., at 5-6.) Nevertheless, as discussed below, the Court [*29] concludes that Pitts has failed to state a claim against CMS under either *Section 504* of the Rehabilitation Act or Title II of the ADA.

Cases interpreting the similar language of Title II of the ADA and *Section 504* of the Rehabilitation Act "are applicable and interchangeable". *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998); *see Calloway v. Boro of Glassboro Dep't of Pol.*, 89 F.Supp.2d 543, 551 (D.N.J. 2000) (stating that the law developed under *Section 504* of the Rehabilitation Act is applicable to Title II of the ADA). To state a claim for violation of either *Section 504* of the Rehabilitation Act or Title II of the ADA, the plaintiff must show that he or she (1) has a disability, (2) is otherwise qualified to participate in a program, and (3) was denied the benefits of the program or discriminated against because of the disability. *see Millington*, 2008 U.S. App. LEXIS 1291, at *7; *Iseley v. Beard*, 200 Fed. Appx. 137, 142 (3d Cir. 2006). [4] A medical condition constitutes a "disability" under the ADA if it "substantially limits one or more of the major life activities of such individual". *42 U.S.C. § 12102*. Similarly, the Rehabilitation Act defines an "individual with a disability" [*30] as, *inter alia*, any person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities". *29 U.S.C. § 705(20)(B)*.

> 4   There is an additional requirement under *Section 504* of the Rehabilitation Act, namely that the plaintiff must show that the defendant receives federal financial assistance.

Both Title II of the ADA and the Rehabilitation Act apply in the prison context. *See e.g., Bartolomeo v. Plymouth County House of Corr.*, No. 99-1621, 2000 U.S. App. Lexis 20915, at *5 (1st Cir. Aug. 16, 2000). Although Pitts listed his medical conditions in the complaint, he did not specify which condition forms the basis of his alleged "disability" and made no allegations suggesting that one or more of his major life activities has

been impaired by any of his alleged medical conditions. Similarly, Pitts asserted in his briefs in opposition to defendants motions that he has various impairments entitling him to ADA and Rehabilitation Act protections, but again he did not specify how any of the identified impairments limit one or more of his major life activities. Instead, he simply suggests that his impairments make Prison life difficult because, [*31] for example, he may lose his balance and fall when handcuffed behind his back and he is unable to hear family members when speaking on the telephone. (Pitts Br. in Opp. to NJDOC Defs. Mot., at 43-48.) Also, he has not asserted that he was excluded from any specific program or service provided by the Prison or otherwise treated differently than other inmates as a result of any such disability. *See Iseley, 200 Fed. Appx. at 142.* "Rather he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's [or the Rehabilitation Act's] prohibitions." *Id.* Thus, Pitts has not asserted a viable claim against the NJDOC Defendants and the CMS Defendants under either the ADA or the Rehabilitation Act. [5]

[5] The Court also notes that Title II of the ADA applies only to "public entities". A "public entity" is defined as a state or local government or "any department, agency, special purpose district, or other instrumentality of a State or States or local government". *42 U.S.C. § 12131.* A private company that contracts with a government department or agency, like CMS, does not constitute a "public entity". *See O'Connor v. Metro Ride, Inc., 87 F. Supp. 2d 894, 900 (D. Minn. 2000)* [*32] (concluding that a private corporation, even one that contracts with a public entity, cannot be subject to liability under Title II of the ADA); *Koslow v. Pa., No. 97-5951, 2000 U.S. Dist. LEXIS 5189, at *4 (E.D. Pa. April 20, 2001)* (stating that there is no authority for extending Title II of the ADA to a private entity that contracts with a public entity); *Doe v. Adkins, 110 Ohio App. 3d 427, 674 N.E.2d 731, 737 (Ohio App. Ct. 1996)* (same); *see also Kolocotronis v. DuPont Meds, No. 02-1426, 2002 U.S. Dist. LEXIS 22522, at *9 (D. Del. Nov. 20, 2002).* Thus, the Court will dismiss Pitts's ADA claim insofar as asserted against the CMS Defendants for this reason as well.

## B. Pitts's State Law Claims

Pitts, in count 3, asserts a negligence claim against the defendants. (Compl., at 33-34.) In count 4, he asserts that the defendants' "willful and wanton conduct" caused him to suffer great anguish and pain. (*Id. at 34.*) Lastly, Pitts asserts a medical negligence claim against defen-

dants Arlene Tinker, Lawrence Donkor, Allan B. Martin, and Grace Melendez in count 5 of the complaint. (*Id. at 35-37.*) The Court will not exercise supplemental jurisdiction over these state law claims in view of the impending dismissal [*33] of the federal claims. *See 28 U.S.C. § 1367(c)(3)* (authorizing same). Thus, the Court will (1) deny without prejudice the separate motions insofar as they seek dismissal of Pitts's state law claims, and (2) dismiss the state law claims without prejudice to reinstate in state court. *See 28 U.S.C. § 1367(d)* (tolling limitations period for state-law claim dismissed under *Section 1367* while claim pending in federal court and for 30 days after dismissal). [6]

[6] Because we have concluded that Pitts failed to state a claim in count 1 and count 2 of the complaint (federal claims), it is not necessary for this Court to address the NJDOC Defendants' alternative arguments that they are entitled to summary judgment with respect to Pitts's claims against them. Indeed, it appears that dismissal of all of the federal claims under *Rule 12(b)(6)* was appropriate. *See Ham v. Greer, No. 07-4834, 2008 U.S. App. LEXIS 5612, at *4-*6 (3d Cir. Mar. 14, 2008)* (affirming order dismissing complaint where prisoner failed to allege facts that, if proved, would allow court to infer defendants were deliberately indifferent to his dental problem, as prisoner's primary dispute was that he did not receive treatment [*34] that he would have preferred); *Smith v. O'Boyle, 251 Fed. Appx. 87, 89-90 (3d Cir. 2007)* (affirming order dismissing complaint, where district court noted that reason for delay in treatment was that nursing staff was responding to another inmate, and once that issue was resolved, prisoner was sent to medical department, treated, and then transported to hospital when in-house treatment detailed in record failed).

## CONCLUSION

The Court will (1) grant the part of the CMS Defendants' motion seeking dismissal of the federal claims, (2) grant the part of the NJDOC Defendants' separate motion seeking dismissal of the federal claims, (3) dismiss all of the federal claims with prejudice, and (4) dismiss the state law claims without prejudice to reinstate in state court. The Court will issue an appropriate order and judgment.

/s/ Mary L. Cooper

**MARY L. COOPER**

United States District Judge

2008 U.S. Dist. LEXIS 31650, *

Dated: April 16, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ANGELO CLARK,                                  :
                                               :
      Plaintiff,                      :
                                               :
    v.                                       :    C. A. No. 06-465 - SLR
                                               :
REGIONAL MEDICAL FIRST                         :    TRIAL BY JURY OF
CORRECTIONAL,                                  :    TWELVE DEMANDED
MANAGER ANGELA WILSON, AND                     :
CORRECTIONAL MEDICAL SERVICES,                 :
                                               :
                 Defendants.

---

## CERTIFICATE OF SERVICE

---

      I, **Eileen M. Ford, Esquire**, hereby certify that on **June 26, 2008,** I electronically filed the **Reply to the Plaintiff's Response to the Motion for Summary Judgment** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following: . I have served via first class mail two copies of foregoing to the Pro Se Plaintiff:

      Angelo Clark
      SBI # 123209
      Delaware Physchiatric Center
      James E. Mitchell Bldg.
      1901 N. DuPont Hwy
      New Castle DE 19720
      Via First Class US Mail

                                          ***/s/ Eileen M.Ford***_____
                                          Eileen M. Ford, Esquire (ID No. 2870)
                                          Marks, O'Neill, O'Brien & Courtney, P.C.
                                          913 North Market Street, #800
                                          Wilmington, DE 19801
                                          (302) 658-6538
                                          *Attorney for Defendant*