**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANGELO CLARK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 06-465 - SLR |
| | : | |
| REGIONAL MEDICAL FIRST | : | TRIAL BY JURY OF |
| CORRECTIONAL, | : | TWELVE DEMANDED |
| MANAGER ANGELA WILSON, AND | : | |
| CORRECTIONAL MEDICAL SERVICES, | : | |
| | : | |
| Defendants. | : | |

**CORRECTIONAL MEDICAL SERVICES, INC.'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**{RELATED DOCKET # 112 -116 & 121}**

COMES NOW, Defendant, Correctional Medical Services, Inc., (hereinafter "CMS") by and

through its undersigned attorney to hereby respond to Plaintiff's Motion for Summary Judgment

and other supplemental pleadings (DI 112 -116 & 121) as follows:

1.      "Summary judgment is proper " if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The movant bears the initial burden of showing that there is no genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Once the movant has met this prima facie

burden, the non-movant must "set out specific facts showing a genuine issue for trial."

Fed.R.Civ.P. 56(e)(2).  A non-movant must present actual evidence that raises a genuine issue of

material fact and may not rely on mere allegations. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 249 (1986).  The Court must view the evidence in the light most favorable to the non-

movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.   Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56(c) motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48 (emphasis in original).  A fact is material only if it might affect the action's outcome under governing law. Id. at 248. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted)." *Quoting,* Pitt v. Hayman, 2008 U.S. Dist. LEXIS 31650 * 9 (Dist. NJ. April 18, 2008) **(Exhibit "A" attached).**

   2. CMS contends that the content of Plaintiff's Motion and supplemental pleadings (DI 112 - 116 & 121) contain the same unsupported allegations of misuse, mistreatment, misdiagnosis, abuse and negligence that he has been asserting in all of his complaints and the recent responses to CMS's motion for summary judgment (DI  106 & 108) that is currently pending with the Court.  As stated above and as set forth in CMS's Motion for Summary Judgment (DI 72) and recent Reply to the Motion for Summary Judgment (DI 119), these mere allegations cannot be enough for this case to survive.   Nor can they be enough to support his claim that he is entitled to summary judgment.

3.      At the very least the claims alleged by Plaintiff amount to allegations of medical malpractice[1], which are not sufficient to establish a claim of deliberate indifference. Rouse v. Plantier, 182 F.3d 192, 197 (3rd. Cir. 1999);  Person v. Corr. Med. Servs., 2008 U.S. Dist. LEXIS 48225 (D. Del. June 23, 2008) **(Exhibit "B" attached);**  *quoting,* White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (citations omitted);  Pitt v. Hayman, et. al., 2008 U.S. 31650 at  *20.   In Baker v. Immanuel Medical Center, 2008 U.S. Dist. LEXIS 8144 at *16-17  (Dist. NB Feb. 4, 2008) **(Exhibit "C" attached)** the Court stated that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner" Id. *quoting,* Estelle v. Gamble, 429 U.S. 97, 106 (1976).   Additionally, since Plaintiff's allegations amount to medical malpractice they cannot survive a summary judgment as Plaintiff has failed to file the affidavit of merit as required by 18 Del. C. §6853.   Delaware law requires that, at the time of filing the complaint, it be accompanied by an affidavit of merit to each defendant signed by an expert witness. 18 Del.C. § 6853. The statute provides for a single 60 day extension for the filing of the affidavit of merit, but only upon timely motion of the plaintiff and for good cause shown. Wilson v. Cartwright, 2008 U.S. Dist. LEXIS 44534 * 14 (D. Del. June 9, 2008) **(Exhibit "D" attached).**  Plaintiff has not filed any such affidavit in this case as required by Delaware law and therefore cannot prevail as a matter of law.

4.      While CMS understands that the non-moving party has the burden of proving a genuine issue of fact in order to survive a summary judgment motion, said burden only arises after Plaintiff has provided sufficient proof, other than mere allegations, that no genuine

---

[1] At no time herein does CMS admit or concede that it or any of its employees committed medical malpractice and/or were negligent in the treatment of Plaintiff.

issue of material fact exists.  Plaintiff's Motion and supplemental pleadings  (DI 112 - 116 &

121) fail to met even the initial burden required by Fed. R. Civ. P. 56 (c ) and therefore, those

pleadings must fail.

5.    In addition to the above, Defendant incorporates by reference as if fully

set forth herein all of the arguments set forth in its Motion for Summary Judgment (DI 72) and

Reply thereto (DI 119) and  as a result contend that Plaintiff's cross motion for summary

judgment must fail as it contains mere allegations that are not sufficient to support a motion for

summary judgment pursuant to Fed. R. Civ. P. 56(c ).

WHEREFORE, Defendant respectfully requests that Plaintiff's motion for

summary judgment be denied.

/s/ Eileen M. Ford, Esquire_____
Eileen M. Ford, Esquire (ID No. 2870)
Megan Mantzavinos, Esquire (ID No. 3802)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538
Date: 7/30/08                                 *Attorney for Defendant CMS*

**Exhibit "A"**
**06-465SLR**

LEXSEE 2008 US DIST LEXIS 31650

**DARYLE L. PITTS, Plaintiff, v. GEORGE W. HAYMAN, et al., Defendants.**

**CIVIL ACTION NO. 07-2256 (MLC)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2008 U.S. Dist. LEXIS 31650*

**April 16, 2008, Decided**
**April 16, 2008, Filed**

**NOTICE:** NOT FOR PUBLICATION

**COUNSEL:** [*1] DARYLE L. PITTS, Plaintiff, Pro se, TRENTON, NJ.

For GEORGE W. HAYMAN, Acting Commissioner, N.J. Department of Corrections, RONALD H. CATHEL, Administrator, N.J. State Prison, MICHELLE R. RICCI, Associate Administrator, N.J. State Prison, DONALD MEE, JR, Assistant Superintendent, N.J. State Prison, Defendants: SARAH BRIE CAMPBELL, LEAD ATTORNEY, OFFICE OF THE NJ ATTORNEY GENERAL, DEPARTMENT OF LAW & PUBLIC SAFETY, RJ HUGHES JUSTICE COMPLEX, TRENTON, NJ.

For ALLAN B. MARTIN, Physician, CMS, Inc., J. BETHEA, Nurse Ombudsman, CMS, Inc., LAWRENCE DONKOR, Physician, CMS, Inc., GRACE MELENDEZ, Physician, CMS, Inc., ARLENE TINKER, Physician, CMS, Inc., CORRECTIONAL MEDICAL SERVICES, INC., CMS Inc., Health Care Provider, N.J. State Prison, Defendants: FRANCES WANG DEVENEY, LEAD ATTORNEY, MARKS, O'NEILL, O'BRIEN & COURTNEY, PC, PENNSAUKEN, NJ.

**JUDGES:** MARY L. COOPER, United States District Judge.

**OPINION BY:** MARY L. COOPER

**OPINION**

**MEMORANDUM OPINION**

**COOPER, District Judge**

*Pro se* plaintiff, Daryle L. Pitts ("Pitts"), commenced this action on May 14, 2007 alleging, *inter alia*, that medical and administrative personnel at New Jersey State Prison ("Prison") where he is currently incarcerated violated his civil rights under *42 U.S.C. § ("Section") 1983.* [*2] (*See* dkt. entry no. 1, Compl.) Pitts asserts that (1) the Court should issue a judgment declaring that the defendants violated, and continue to violate, his rights under the *Eighth* and *Fourteenth Amendments to the United States Constitution* (count 1), (2) the Court should issue an injunction directing the defendants to arrange for him to receive specific medical treatments (also count 1), (3) the defendants were deliberately indifferent to his serious medical needs "by allowing staffing levels in the clinic at [the Prison] to undermine its treatment protocols" (count 2), (4) the defendants negligently failed to refer Pitts to medical specialists for evaluation and treatment of his various medical conditions (count 3), (5) he suffers "great anguish and pain and anguish of mind" as a result of the defendants' willful and wanton conduct, which includes inappropriate staffing and record keeping at the Prison's medical clinic (count 4), and (6) defendants Arlene Tinker, Lawrence Donkor, Allan B. Martin, and Grace Melendez performed inadequate and inappropriate evaluations of Pitts's medical conditions "with knowing negligence" and failed to accurately report his conditions [*3] (count 5). (*Id.* at 30-37.) Thus, Pitts seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*See id.*)

Defendants Correctional Medical Services, Inc. ("CMS"), Allan B. Martin, J. Bethea, Lawrence Donkor, Grace Melendez, and Arlene Tinker (collectively, the "CMS Defendants") move to dismiss the complaint insofar as asserted against them pursuant to *Federal Rule of Civil Procedure ("Rule") 12(b)(6).* (Dkt. entry no. 17.) Further, defendants George W. Hayman, Ronald H. Cathel, Michelle R. Ricci, and Donald Mee, who are each current or former employees of the New Jersey Department of Corrections (collectively, the "NJDOC Defendants"), separately move to dismiss the complaint insofar as asserted against them pursuant to *Rule 12(b)(6),* or, in the alternative, for summary judgment in

their favor pursuant to *Rule 56*. (Dkt. entry no. 20.) The Court, for the reasons stated herein, will (1) grant the part of the CMS Defendants' motion seeking dismissal of Pitts's federal claims, (2) grant the part of the NJDOC Defendants' separate motion seeking dismissal of Pitts's federal claims, (3) dismiss all of the federal claims with prejudice, and (4) dismiss Pitts's state [*4] law claims without prejudice to reinstate in state court.

## BACKGROUND

Pitts contends that he suffers or has previously suffered while incarcerated from the following medical conditions: (1) hepatitis C, genotype 1b, (2) cardiovascular disease, (3) middle back and spinal column abnormalities, (4) Parkinson's Disease, (5) hearing impairment, (6) nodules on his skin, and (7) neurological abnormalities. (*See* Compl., at 13-30.) Pitts acknowledges that he has received some medical attention with respect to these conditions. (*See id.*) Specifically, in the complaint, Pitts notes that (1) he was tested for hepatitis C in April 1993, (2) in connection with his hepatitis C, he was given twelve liver function blood tests over a period of twenty years (from 1985 through 2004) in order to measure his levels of bilirubin, alanine transamine, and aspartate transamine, (3) his Prison medical records properly indicate that he (a) showed evidence of a pulmonary embolism on November 22, 1986, (b) received an echocardiogram on June 11, 1993 that showed mitral valve prolapse, and (c) showed evidence of hypertension cardiovascular disease and other cardiovascular conditions on August 21, 2001, (4) he had an [*5] echocardiogram on January 4, 2004, which "reported sinus bradycardia [sic] possible anteroseptal infarct", (5) he was taken to St. Francis Medical Center on December 1, 2006 after his legs collapsed, (6) a liver biopsy performed on February 8, 2006 again confirmed that he has hepatitis C, genotype 1b, (7) he met with a radiologist on August 23, 2001 and again on January 13, 2002, (8) he met with a neurologist in 2004 or 2005, (9) he was diagnosed with a hearing deficit requiring Binaural type amplification, and thus, was given hearing aids, and (10) a CAT scan of his lumbar spine was performed on February 6, 2007. (*Id.* at 14, 16-19, 22-24, 26; *see* CMS Defs. Br., at 2 (listing treatment Pitts received); NJDOC Defs. Br., at 1-13 (providing detailed list of treatments Pitts received and grievances he filed during his incarceration).) Nevertheless, Pitts argues that he:

> has been plagued with chronic pain and deteriorating health conditions for several years that have been left essentially untreated for diagnosed conditions, and the delay in treatment that was provided, fell far below community medical standards causing further extreme distress and hav-

ing to endure and be tormented unnecessarily, [*6] resulting in deterioration of health and uncontrolled suffering.

(Pitts Br. in Opp. to NJDOC Defs. Mot., at 1.)

## I. Legal Standards

### A. Motion to Dismiss Standard

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *Fed.R.Civ.P. 12(b)(6)*. On a motion to dismiss, the Court generally must accept as true all of the factual allegations in the complaint, and must draw all reasonable inferences in favor of the plaintiff. *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 134 (3d Cir. 2004); *Doe v. Delie*, 257 F.3d 309, 313 (3d Cir. 2001). However, the Court need not credit bald assertions or legal conclusions alleged in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)". *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).

The Court, when considering a motion to dismiss, may generally not "consider matters extraneous to the [*7] pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. However, if the Court exercises discretion and permits a party to present matters outside the pleadings, the Court must (1) convert the motion to dismiss into one for summary judgment, and (2) allow the parties a reasonable opportunity to present all material pertinent to such a motion under *Rule 56*. *See Fed.R.Civ.P. 12(b)*. An exception to this general rule is that the Court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment. *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004).

### B. Summary Judgment Standard

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*. The movant bears the initial burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the

[*8] movant has met this prima facie burden, the non-movant must "set out specific facts showing a genuine issue for trial." *Fed.R.Civ.P. 56(e)(2).* A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).*

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).* At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249.* Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a *Rule 56(c)* motion]; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id. at 252.* "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement [*9] is that there be no *genuine* issue of *material* fact." *Id. at 247-48* (emphasis in original). A fact is material only if it might affect the action's outcome under governing law. *Id. at 248.* "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id. at 249-50* (internal citations omitted).

## II. Legal Standards Applied Here

### A. Pitts's Federal Law Claims

Pitts, in count 1, requests that the Court issue (1) a judgment declaring that the defendants violated and continue to violate his rights under the *Eighth* and *Fourteenth Amendments to the United States Constitution* "and Federal Statutory Law", and (2) an injunction directing the defendants to immediately arrange for him to receive certain medical testing and treatment. (Compl., at 31-32.) Pitts states that he is entitled to damages "in an amount sufficient to compensate him for his anguish, pain and mental anguish suffered by him due to the deliberate indifference and objectively unreasonableness and intentional misconduct of defendants". (*Id.* at 32.) [*10] Similarly, in count 2, Pitts asserts that the defendants were deliberately indifferent to his medical needs "by allowing staffing levels in the clinic at [the Prison] to undermine its treatment protocols." (*Id.*) Thus, Pitts contends that as a result of the defendants' deliberate indif-

ference, he "is suffering and suffered great pain and anguish of mind" and was denied his constitutional rights under the *Eighth* and *Fourteenth Amendments, Section 1983,* Title II of the Americans with Disabilities Act, *42 U.S.C. § 12101 et seq.* ("ADA"), and Section 504 of the Rehabilitation Act, *29 U.S.C. § 794.* (*Id.*)

### 1. *Section 1983* and the *Eighth Amendment*

A plaintiff asserting civil rights violations under *Section 1983* must establish that the defendant acted under color of state law to deprive the plaintiff of a right secured by the United States Constitution or the laws of the United States. *Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Section 1983* does not create substantive rights, but instead provides a remedy for the violation of rights created by other federal laws. *Id.; Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)* (noting that *Section 1983* does not, by itself, create rights, [*11] but instead provides remedies for deprivation of rights established by Constitution or other federal laws). "The color of state law element is a threshold issue; there is no liability under *[Section] 1983* for those not acting under color of law." *Groman, 47 F.3d at 638.* Here, the CMS Defendants, who were responsible for providing medical services to the Prison's inmates, and the NJDOC Defendants, who are each current or former employees of the New Jersey Department of Corrections, were clearly acting under color of state law at all times relevant to the complaint.

Once it has been established that the defendant acted under color of state law, the Court must identify the federal right the defendant allegedly violated. *See Groman, 47 F.3d at 633.* Further, officials may be liable under *Section 1983* for the acts of those over whom they have supervisory responsibility. However, civil rights liability cannot be predicated solely on the doctrine of *respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).* Instead, personal involvement in the alleged wrong-doing must be shown. *Id.*

Pitts alleges that, *inter alia,* the defendants violated his *Eighth Amendment* right to be free [*12] from cruel and unusual punishment by acting with deliberate indifference to his serious medical needs and failing to provide him with proper medical care. (*See generally* Compl.) Deliberate indifference to serious medical needs of prisoners violates the *Eighth Amendment,* which is applicable to the states through the *Fourteenth Amendment,* because it constitutes "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993).* Accordingly, to succeed on an *Eighth Amendment* medical-care claim, an inmate must establish that (1) he has a serious medical need, and (2) prison officials were deliberately indiffer-

ent to such medical need. *Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)*. A medical need is considered serious if it is one a physician would diagnose as requiring treatment or one that a lay person would easily recognize as needing a doctor's attention. *Monmouth County Corr. Inst'l Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)*. Further, if denial or delay causes "unnecessary and wanton infliction of pain", a life-long handicap, or permanent loss, the medical need is considered serious. *Id.*

"Where prison [*13] authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury, deliberate indifference is manifest.'" *Lanzaro, 834 F.2d at 343* (internal citations omitted). Deliberate indifference is also manifest when prison officials "erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates." *See id. at 347* (internal quotations and citations omitted). However, claims of negligence or malpractice are not sufficient to establish deliberate indifference. *Rouse, 182 F.3d at 197; see White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990)* ("Mere medical malpractice cannot give rise to a violation of the *Eighth Amendment*."). Thus, in order to state a cognizable claim for failure to provide medical care in violation of the *Eighth Amendment*, a prisoner must allege acts or omissions that are sufficiently harmful to offend "evolving standards of decency". *Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*.

The Court concludes, after accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of Pitts, that [*14] Pitts has the following serious medical needs requiring treatment: (1) hepatitis C, genotype 1b; (2) cardiovascular disease; (3) middle back and spinal column abnormalities; (4) Parkinson's Disease; and (5) hearing impairment. (See Compl., at 13-30.) *Lanzaro, 834 F.2d at 347.* [1] Nevertheless, Pitts has failed to show that the NJDOC Defendants deprived him of a constitutional right. *See Groman, 47 F.3d at 633.*

> 1    The Court also concludes that Pitts has not sufficiently alleged or established that either the "nodules" on his skin or his neurological "abnormalities" constitute serious medical conditions. Pitts has not adequately stated that such impairments would be easily recognized as requiring medical treatment. *See Lanzaro, 834 F.2d at 347.*

Pitts has not alleged that either (a) George W. Hayman, the New Jersey Department of Corrections commissioner, (b) Ronald H. Cathel, the former Prison administrator, (c) Michelle R. Ricci, the acting Prison administrator, or (d) Donald Mee, the former assistant superintendent of the Prison, had any personal involvement

in his medical treatment or the diagnosis of his various medical conditions. (*See* NJDOC Defs. Br., at 19-22.) Instead, Pitts generally [*15] alleges that the NJDOC Defendants should have been aware of his medical conditions and assisted him in obtaining reasonable and adequate medical care. (*See generally,* Compl.) However, Pitts has not suggested in either the complaint or his various briefs that any of the NJDOC Defendants (1) directed the actions of the medical personnel responsible with respect to his treatment, or (2) knew that the CMS Defendants or members of the Prison staff were acting with deliberate indifference to his serious medical needs, and acquiesced to such conduct. *Jetter v. Beard, 130 Fed. Appx. 523, 526 (3d Cir. 2005)* (stating that to state a *Section 1983* claim against supervisor defendants, the plaintiff must allege that such defendants directed the actions of those who committed the wrongdoing, or knew of such actions and acquiesced to them).

That the NJDOC Defendants did not ensure that the CMS Defendants were appropriately and adequately responding to Pitts's requests for medical attention and specific treatments does not constitute deliberate indifference to medical needs. It is reasonable for prison administrators, who are aware that a particular inmate is receiving medical treatment from the prison [*16] medical staff, to defer to the treatment and diagnosis decisions of such staff members even after receiving complaints from the inmate suggesting that he disagrees with the treatment decisions or believes them to be inadequate. (*See* Pitts Br. in Opp. to NJDOC Defs. Mot., at 12 (noting that NJDOC Defendants were repeatedly advised of the constitutional violations through Pitts's remedy forms, but choose to ignore such violations).) *Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993)* (holding that prison administrators could not "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor"). The NJDOC Defendants may have had general supervisory authority over the CMS Defendants and other members of the Prison staff, but they were not directly involved in Pitt's medical treatment and did not participate in making the diagnosis and treatment decisions or cause the delays that underlie the complaint. Therefore, Pitts's *Eighth Amendment* deliberate indifference claims must be dismissed insofar as asserted against the NJDOC Defendants because they are based solely on these defendants' [*17] supervisory roles over the Prison medical staff, and thus, are predicated solely on the doctrine of *respondeat superior. See Rode, 845 F.2d at 1207* (noting that *Section 1983* liability cannot be predicated on the doctrine of *respondeat superior,* but instead, personal involvement in the alleged wrong-doing must be shown); *Durmer, 991 F.2d at 69* (holding that prison administrators were not "deliberately indifferent" by failing to respond to

complaints of a prisoner being treated by a prison medical doctor); *Beard, 130 Fed. Appx. at 526* (dismissing *Section 1983* claims against supervisory defendants because the plaintiff did not show that they had any personal involvement in his medical treatment).

The Court also finds that Pitts's *Eighth Amendment* claims should be dismissed insofar as asserted against the CMS Defendants. Although the complaint describes a litany of grievances Pitts has expressed regarding his medical treatment at the Prison, it also lists many instances where he received testing and treatment for his various conditions. Specifically, Pitts acknowledges that (1) he was tested for hepatitis C in April 1993, (2) in connection with his hepatitis C, he was given twelve liver [*18] function blood tests over a period of twenty years (from 1985 through 2004) in order to measure his levels of bilirubin, alanine transamine, and aspartate transamine, (3) his Prison medical records properly note that he showed evidence of a pulmonary embolism on November 22, 1986, received an echocardiogram on June 11, 1993 that showed mitral valve prolapse, and showed evidence of hypertenstion cardiovascular disease and other cardiovascular conditions on August 21, 2001, (4) he had an echocardiogram on January 4, 2004, which "reported sinus bradycadia [sic] possible anteroseptal infarct", (5) he was taken to St. Francis Medical Center on December 1, 2006 after his legs collapsed, (6) a liver biopsy performed on February 8, 2006 again confirmed that he has hepatitis C, genotype 1b, (7) he met with a radiologist on August 23, 2001 and again on January 13, 2002, (8) he met with a neurologist in 2004 or 2005, (9) he was diagnosed with a hearing deficit requiring Binaural type amplification, and thus, was given hearing aids, and (10) a CAT scan of his lumbar spine was performed on February 6, 2007. (Compl., at 14, 16-19, 22-24, 26; *see* CMS Defs. Br., at 2 (listing treatment Pitts received); [*19] NJDOC Defs. Br., at 1-13 (providing detailed list of treatments Pitts received and grievances he filed during his incarceration).)

The CMS Defendants also submitted a letter to this Court noting that Pitts (1) does not meet the guidelines for the treatment he seeks for his hepatitis C, but is entitled to have another liver biopsy in two to five years, (2) had an electrocardiogram on July 15, 2007, which reported "normal" results, (3) had chest x-rays in October 2004 and February 2005, which did not reveal any pulmonary nodule, (4) had a lumbar spine and cervical spine MRI on September 11, 2007, (5) receives treatment for his Parkinson's Disease, (6) had an x-ray of his head on October 2, 2006 that showed several metallic densities, (7) underwent a CAT scan of his head on November 27, 2006, which reported "that this was a normal examination", and (8) had an x-ray of his head on January 18, 2007, which showed no medical problems. (Dkt. entry

no. 18, 11-14-07 Deveney Letter.) Accordingly, the CMS Defendants may not have permitted Pitts to receive all medical testing and treatments he requested, but even accepting all of Pitts's allegations as true, it does not appear that he was exposed [*20] to undue suffering or the threat of tangible residual injury. *See Lanzaro, 834 F.2d at 343*. In contrast, it appears that he is receiving consistent testing and treatment.

Pitts's allegations against the CMS Defendants essentially amount to (1) statements that alternative and better treatments were available for his medical conditions, (2) self-diagnosis, and (3) arguments that the CMS Defendants' failure to allow him to see all specialists and receive all treatments and procedures he desired violated his constitutional rights. The Court disagrees, however, and concludes that Pitts has received adequate medical care with respect to his conditions. Any perceived delays in his receipt of medical diagnoses and treatments, and the defendants' alleged refusal to allow Pitts to have additional testing and treatments, may, at most, constitute negligence, but such conduct does not rise to the level of offending "evolving standards of decency". *Estelle, 429 U.S. at 106*. Therefore, the Court concludes that dismissal of Pitts's *Eighth Amendment* claims against the CMS Defendants is appropriate here. [2]

    2  Pitts asserts that the "complaint alleges a pattern of denying, failing, discarding, not providing [*21] adequate medical attention." (Pitts Br. in Opp. to NJDOC Defs. Mot., at 10.) He further asserts that (1) the NJDOC Defendants each had policymaking authority, (2) his allegations infer "deliberate indifference" or "tacit authorization" by the NJDOC Defendants, which is sufficient to establish an official custom or practice, and (3) although official liability cannot be predicated on the doctrine of *respondeat superior*, the NJDOC Defendants may be liable for a practice or custom under *Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. (*Id.* at 10, 12.) However, Monell simply provides that local government units may be sued directly under *Section 1983* if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell, 436 U.S. at 690*. There are no municipal government units named as defendants here. In any event, under *Monell*, there can be no municipal liability if the Court determines that none of the individual defendants violated the plaintiff's constitutional rights. *See Deninno v. Mun. of Penn Hills, No. 07-1550, 2008 U.S. App. LEXIS 5518, at *12 (3d Cir. March 14, 2008)*; [*22] *Bornstad v. Honey Brook Twp., 211 Fed.*

*Appx. 118, 126 (3d Cir. 2007).* (concluding that because the court found that there was no violation of plaintiff's constitutional rights, there was no basis for imposing municipal liability).

## 2. The *Fourteenth Amendment*

The *Due Process Clause of the Fourteenth Amendment* provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law." *U.S. Const. amend. XIV.* The *Due Process Clause* protects individuals against two types of government action.

> So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty". When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as procedural due process.

*United States v. Salerno, 481 U.S. 739, 746, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)* (internal cites omitted) (discussing *Fifth Amendment's due process clause*, which contains identical language). To prevail on a substantive due process claim, the plaintiff must demonstrate that he or [*23] she has a "fundamental" property interest or right under the United States Constitution. *Hill v. Bor. of Kutztown, 455 F.3d 225, 235 (3d Cir. 2006).* In analyzing a procedural due process claim, the Court must first determine whether the plaintiff was deprived of a liberty or property interest protected by due process. *Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982); see Atkins v. Parker, 472 U.S. 115, 128, 105 S. Ct. 2520, 86 L. Ed. 2d 81 (1985).*

Liberty interests protected by the *Due Process Clause of the Fourteenth Amendment* may arise under the clause itself, a state statute, or a regulation. *Muhammad v. Fauver, No. 79-3121, 1989 U.S. Dist. LEXIS 7324, at *43 (D.N.J. July 28, 1989).* The Court, if concluding that the plaintiff was deprived of a liberty or property interest, must determine what process is necessary. *Logan, 455 U.S. at 428; see Atkins, 472 U.S. at 128.* Procedural due process is a flexible requirement and "calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)* (cite omitted).

Pitts asserts that he has a liberty interest in "the right to due process, equal protection, medical care and to be free from unnecessary and wanton infliction [*24] of pain." (Pitts Br. in Opp. to NJDOC Defs. Mot., at 24.) Pitts further asserts that the "defendants have denied him his due process rights by refusing to provide necessary timely adequate care and by refusing to adopt a process to address these concerns." (*Id.*) Accordingly, Pitts contends that he has stated a claim for violation of his rights under the *Fourteenth Amendment* because the defendants' unreasonable delay in providing him with medical treatment and refusal to provide him with requested medical care and specialty referrals "may be construed as a deliberate decision which is not reasonably related to any proper governmental objective, and thus it may deprive [him] of his liberty rights without due process." (*Id.*)

To the extent Pitts asserts a substantive due process claim against the defendants, the Court finds that such claim fails because Pitts has not alleged that the defendants engaged in any conduct that was so egregious that it "shocks the conscience" of the Court or "interferes with rights implicit in the concept of ordered liberty." *See Salerno, 481 U.S. at 746.* Moreover, an inmate does not have an independent constitutional right to outside medical care or treatments [*25] that are additional or supplemental to the care provided by the prison staff. *Roberts v. Spalding, 783 F.2d 867, 870 (9th Cir. 1986).* Thus, Pitts does not have a fundamental interest or right to receive medical treatments, undergo medical procedures, or consult specialists outside the Prison, which is entitled to substantive due process protection. *See Hill, 455 F.3d at 235.*

This Court also finds that Pitts does not have a viable procedural due process claim against the defendants because he has not demonstrated that he has any property interest protected by due process. Specifically, inmates do not have a constitutional right to receive all types of requested medical attention, and thus, Pitts's specific requests for medical treatments or specialist referrals did not constitute property interests protected by the *Fourteenth Amendment. See Sammons v. Allenbrand, No. 92-3373, 1993 U.S. App. LEXIS 2068, at *3 (10th Cir. 1993)* (noting that "[i]nmates do not have a constitutional right to a physician's attention for every submitted medical request" and determining that the plaintiff inmate could not allege a procedural due process claim simply because his medical treatment requests were [*26] screened by the prison staff, which determined whether the inmate required treatment by a physician). Therefore, the Court will grant the NJDOC Defendants' and CMS Defendants' separate motions to dismiss with respect to Pitts's *Fourteenth Amendment* claims. [3]

> 3    To the extent Pitts attempts to state a claim under the *Fourteenth Amendment's equal protection clause,* such claim must also fail. To state a

claim for violation of the *Fourteenth Amendment's equal protection clause,* a plaintiff must demonstrate "that an official's actions were (1) discriminatory in effect and (2) motivated by discriminatory purposes." *Martino v. County of Camden,* No. 04-5300, 2005 U.S. Dist. LEXIS 15622, at *41 (D.N.J. July 26, 2005). To show discriminatory effect, a plaintiff must prove that he or she is a member of a protected class and was treated differently than similarly situated individuals, who are members of an unprotected class. *Id.; see Pollack v. City of Phila.,* No. 06-4089, 2007 U.S. Dist. LEXIS 11624, at *11 (E.D. Pa. Feb. 16, 2007). Pitts has not identified any protected class in which he is a member. Further, he has not asserted that he was treated differently than nonmembers of such class. Instead, [*27] he simply alleges that he was denied adequate medical treatment. Such allegations are insufficient to state an equal protection claim. Accordingly, the Court will grant the separate motions to the extent that they seek dismissal of Pitts's claims, if any, under the *equal protection clause of the Fourteenth Amendment.*

**3. The ADA and *Section 504* of the Rehabilitation Act**

The ADA provides in relevant part that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *42 U.S.C. § 12132.* Similarly, Section 504 of the Rehabilitation Act provides that:

> [n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

*29 U.S.C. § 794.*

Neither the NJDOC Defendants nor the individual CMS Defendants receive [*28] federal financial assistance, and thus, they are not subject to *Section 504* of the Rehabilitation Act. *See A.W. v. Jersey City Pub. Sch.,* 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to *Section 504* against recipients of federal financial assistance, but not against individuals."); *Emerson v. Thiel Coll.,* 296 F.3d 184, 190 (3d Cir. 2002) (stating that because the individual defendants did not receive federal aid, the plaintiff could not state a claim against them under *Section 504* of the Rehabilitation Act); *see also Millington v. Temple Univ. Sch. of Dentistry,* No. 06-4796, 2008 U.S. App. LEXIS 1291, at *7 n.3 (3d Cir. Jan. 23, 2008) (noting that the plaintiff must show that the defendant received financial assistance to establish a claim under the Rehabilitation Act). It is irrelevant whether the New Jersey Department of Corrections, the employer or former employer of each of the NJDOC Defendants, receives federal financial assistance because it is not a named defendant in this action. However, Pitts alleges that CMS receives federal funding and the CMS Defendants have not rebutted that allegation. (*See* Compl., at 5-6.) Nevertheless, as discussed below, the Court [*29] concludes that Pitts has failed to state a claim against CMS under either *Section 504* of the Rehabilitation Act or Title II of the ADA.

Cases interpreting the similar language of Title II of the ADA and *Section 504* of the Rehabilitation Act "are applicable and interchangeable". *Gorman v. Bartch,* 152 F.3d 907, 912 (8th Cir. 1998); *see Calloway v. Boro of Glassboro Dep't of Pol.,* 89 F.Supp.2d 543, 551 (D.N.J. 2000) (stating that the law developed under *Section 504* of the Rehabilitation Act is applicable to Title II of the ADA). To state a claim for violation of either *Section 504* of the Rehabilitation Act or Title II of the ADA, the plaintiff must show that he or she (1) has a disability, (2) is otherwise qualified to participate in a program, and (3) was denied the benefits of the program or discriminated against because of the disability. *see Millington, 2008 U.S. App. LEXIS 1291, at *7; Iseley v. Beard, 200 Fed. Appx. 137, 142 (3d Cir. 2006).* [4] A medical condition constitutes a "disability" under the ADA if it "substantially limits one or more of the major life activities of such individual". *42 U.S.C. § 12102.* Similarly, the Rehabilitation Act defines an "individual with a disability" [*30] as, *inter alia,* any person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities". *29 U.S.C. § 705(20)(B).*

> 4 There is an additional requirement under *Section 504* of the Rehabilitation Act, namely that the plaintiff must show that the defendant receives federal financial assistance.

Both Title II of the ADA and the Rehabilitation Act apply in the prison context. *See e.g., Bartolomeo v. Plymouth County House of Corr.,* No. 99-1621, 2000 U.S. App. Lexis 20915, at *5 (1st Cir. Aug. 16, 2000). Although Pitts listed his medical conditions in the complaint, he did not specify which condition forms the basis of his alleged "disability" and made no allegations suggesting that one or more of his major life activities has

been impaired by any of his alleged medical conditions. Similarly, Pitts asserted in his briefs in opposition to defendants motions that he has various impairments entitling him to ADA and Rehabilitation Act protections, but again he did not specify how any of the identified impairments limit one or more of his major life activities. Instead, he simply suggests that his impairments make Prison life difficult because, [*31] for example, he may lose his balance and fall when handcuffed behind his back and he is unable to hear family members when speaking on the telephone. (Pitts Br. in Opp. to NJDOC Defs. Mot., at 43-48.) Also, he has not asserted that he was excluded from any specific program or service provided by the Prison or otherwise treated differently than other inmates as a result of any such disability. *See Iseley, 200 Fed. Appx. at 142.* "Rather he claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's [or the Rehabilitation Act's] prohibitions." *Id.* Thus, Pitts has not asserted a viable claim against the NJDOC Defendants and the CMS Defendants under either the ADA or the Rehabilitation Act. [5]

    5  The Court also notes that Title II of the ADA applies only to "public entities". A "public entity" is defined as a state or local government or "any department, agency, special purpose district, or other instrumentality of a State or States or local government". *42 U.S.C. § 12131.* A private company that contracts with a government department or agency, like CMS, does not constitute a "public entity". *See O'Connor v. Metro Ride, Inc., 87 F. Supp. 2d 894, 900 (D. Minn. 2000)* [*32] (concluding that a private corporation, even one that contracts with a public entity, cannot be subject to liability under Title II of the ADA); *Koslow v. Pa., No. 97-5951, 2000 U.S. Dist. LEXIS 5189, at *4 (E.D. Pa. April 20, 2001)* (stating that there is no authority for extending Title II of the ADA to a private entity that contracts with a public entity); *Doe v. Adkins, 110 Ohio App. 3d 427, 674 N.E.2d 731, 737 (Ohio App. Ct. 1996)* (same); *see also Kolocotronis v. DuPont Meds, No. 02-1426, 2002 U.S. Dist. LEXIS 22522, at *9 (D. Del. Nov. 20, 2002).* Thus, the Court will dismiss Pitts's ADA claim insofar as asserted against the CMS Defendants for this reason as well.

**B. Pitts's State Law Claims**

    Pitts, in count 3, asserts a negligence claim against the defendants. (Compl., at 33-34.) In count 4, he asserts that the defendants' "willful and wanton conduct" caused him to suffer great anguish and pain. (*Id.* at 34.) Lastly, Pitts asserts a medical negligence claim against defen-

dants Arlene Tinker, Lawrence Donkor, Allan B. Martin, and Grace Melendez in count 5 of the complaint. (*Id.* at 35-37.) The Court will not exercise supplemental jurisdiction over these state law claims in view of the impending dismissal [*33] of the federal claims. *See 28 U.S.C. § 1367(c)(3)* (authorizing same). Thus, the Court will (1) deny without prejudice the separate motions insofar as they seek dismissal of Pitts's state law claims, and (2) dismiss the state law claims without prejudice to reinstate in state court. *See 28 U.S.C. § 1367(d)* (tolling limitations period for state-law claim dismissed under *Section 1367* while claim pending in federal court and for 30 days after dismissal). [6]

    6  Because we have concluded that Pitts failed to state a claim in count 1 and count 2 of the complaint (federal law claims), it is not necessary for this Court to address the NJDOC Defendants' alternative arguments that they are entitled to summary judgment with respect to Pitts's claims against them. Indeed, it appears that dismissal of all of the federal claims under *Rule 12(b)(6)* was appropriate. *See Ham v. Greer, No. 07-4834, 2008 U.S. App. LEXIS 5612, at *4-*6 (3d Cir. Mar. 14, 2008)* (affirming order dismissing complaint where prisoner failed to allege facts that, if proved, would allow court to infer defendants were deliberately indifferent to his dental problem, as prisoner's primary dispute was that he did not receive treatment [*34] that he would have preferred; *Smith v. O'Boyle, 251 Fed. Appx. 87, 89-90 (3d Cir. 2007)* (affirming order dismissing complaint, where district court noted that reason for delay in treatment was that nursing staff was responding to another inmate, and once that issue was resolved, prisoner was sent to medical department, treated, and then transported to hospital when in-house treatment detailed in record failed).

**CONCLUSION**

    The Court will (1) grant the part of the CMS Defendants' motion seeking dismissal of the federal claims, (2) grant the part of the NJDOC Defendants' separate motion seeking dismissal of the federal claims, (3) dismiss all of the federal claims with prejudice, and (4) dismiss the state law claims without prejudice to reinstate in state court. The Court will issue an appropriate order and judgment.

    /s/ Mary L. Cooper

**MARY L. COOPER**

    United States District Judge

2008 U.S. Dist. LEXIS 31650, *

Dated: April 16, 2008

**Exhibit "B"**
**06-465SLR**

37 of 64 DOCUMENTS

**JAMES A. PERSON, Plaintiff, v. CORRECTIONAL MEDICAL SERVICES and DEPARTMENT OF CORRECTIONS, Defendants.**

**Civ. No. 08-161-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

***2008 U.S. Dist. LEXIS 48225***

**June 23, 2008, Decided**

**COUNSEL:** [*1] James A. Person, Plaintiff, Pro se, Wilmington, DE.

**JUDGES:** Sue L. Robinson, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM ORDER**

At Wilmington this 23d day of June, 2008, having screened the case pursuant to *28 U.S.C. § 1915* and *§ 1915A*;

IT IS ORDERED that the complaint is dismissed for failure to state a claim upon which relief may be granted pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*, for the reasons that follow:

1. **Background.** Plaintiff James A. Person ("plaintiff"), an inmate at the Howard R. Young Correctional Institution, filed this civil rights action pursuant to *42 U.S.C. § 1983*. He appears pro se and has been granted leave to proceed in forma pauperis.

2. **Standard of Review.** When a litigant proceeds in forma pauperis, *28 U.S.C. § 1915* provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, *28 U.S.C. § 1915A* provides for screening of the complaint by the court. Both *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)* provide that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a [*2] defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)*.

3. In performing its screening function under *§ 1915(e)(2)(B)*, the court applies the standard applicable to a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*. *Fullman v. Pennsylvania Dep't of Corr., No. 4:07CV-000079, 2007 U.S. Dist. LEXIS 5316, 2007 WL 257617 (M.D. Pa. Jan. 25, 2007)* (citing *Weiss v. Cooley, 230 F.3d 1027, 1029 (7th Cir. 2000)*. The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus, --U.S.--, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002)*. A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly, --U.S.--, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)* (quoting *Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957))*; *Fed. R. Civ. P. 8*.

4. A complaint does not need detailed factual allegations, however, "a plaintiff's obligation to provide the 'grounds' of [*3] his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id. at 1965* (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). Plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008)*. "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. *Id.* (citing *Twombly, 127 S.Ct. at 1965 n.3*). Therefore, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Id. at 235* (quot-

ing *Twombly, 127 S.Ct. at 1965 n.3*). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary [*4] element." *Id. at 234*. Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus, --U.S.--, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)* (citations omitted).

5. **Discussion.** Plaintiff alleges that he was taken to sick call, asked some questions that led him to believe he may have Hepatitis C, and was given an injection for protection from Hepatitis A and B. Plaintiff later felt fatigued and was given another blood test. Plaintiff was told that he was "fine", but believes it is a lie and that he needs appropriate and necessary health care. Plaintiff was seen a second time and was told that his blood count was low. He asks for one million dollars in damages.

6. **Medical Needs.** The *Eighth Amendment* proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble, 429 U.S. 97, 103-105, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*. In order to set forth a cognizable claim, an inmate must allege (I) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that [*5] need. *Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)*. A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)*. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble, 429 U.S. at 104-05*.

7. "[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley, 219 F.3d 132,*

138-140 (2d Cir. 2000)*. An inmate's claims against members of a prison medical department are not viable under *§ 1983* where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble, 429 U.S. 97, 107, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990)* (citations omitted); *see also Daniels v. Williams, 474 U.S. 327, 332-34, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)* [*6] (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis, 372 F.3d 218, 235 (3d. Cir. 2004)* (citations omitted).

8. Even when reading the complaint in the most favorable light to plaintiff, he fails to state an actionable constitutional claim against defendants for deliberate indifference to a serious medical need. Rather, the complaint alleges that plaintiff is receiving medical care and attention. Nonetheless, he believes he should receive additional care. At the most, the allegations might fall under the aegis of a medical malpractice/negligence claim, rather than deliberate indifference to serious medical needs claim.

9. **Conclusion.** Based upon the foregoing analysis, the complaint is dismissed for failure to state a claim and as frivolous pursuant to *28 U.S.C. § 1915(e)(2)(B)* and *§ 1915A(b)(1)*. Amendment of the complaint would be futile. *See Alston v. Parker, 363 F.3d 229 (3d Cir. 2004); Grayson v. Mayview State Hosp., 293 F.3d 103, 111 (3d Cir. 2002); Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir. 1976)*.

/s/ Sue L. Robinson

UNITED [*7] STATES DISTRICT JUDGE

**Exhibit "C"**
**06-465SLR**

LEXSEE 2008 U.S. DIST. LEXIS 8144

**ROBERT F. BAKER, Plaintiff, v. IMMANUEL MEDICAL CENTER, et al., Defendants.**

**8:06CV655**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

*2008 U.S. Dist. LEXIS 8144*

**February 4, 2008, Decided**
**February 4, 2008, Filed**

**PRIOR HISTORY:** *Baker v. Immanuel Med. Ctr., 2007 U.S. Dist. LEXIS 74102 (D. Neb., Oct. 3, 2007)*

**COUNSEL:** [*1] Robert F. Baker, Plaintiff, Pro se, Omaha, NE.

For Immanuel Medical Center, Defendant: Ashley E. Sloup, David L. Welch, PANSING, HOGAN LAW FIRM, Omaha, NE.

For T. D. Gensler, M.D., Correctional Medical Services, at the Douglas County Jail, Defendants: Andrew D. Strotman, Travis P. O'Gorman, CLINE, WILLIAMS LAW FIRM - LINCOLN, Lincoln, NE; Margaret A. Olsen, CLINE, WILLIAMS LAW FIRM - OMAHA, Omaha, NE.

**JUDGES:** Warren K. Urbom, United States Senior District Judge.

**OPINION BY:** Warren K. Urbom

**OPINION**

**MEMORANDUM AND ORDER**

Pending before the court are Defendant Immanuel Medical Center's [1] ("Immanuel") Motion for Summary Judgment (filing no. 82) and Defendants T.D. Gensler ("Gensler") and Correctional Medical Services' ("CMS") Motion for Summary Judgment. (Filing No. 94.) Also pending before the court are numerous miscellaneous motions filed by the parties. As set forth in this memorandum and order, Defendants' Motions for Summary Judgment are granted and all pending motions are denied.

1    Defendant Immanuel Medical Center refers to itself in its filings as "Alegent Health-Immanuel

Medical Center, Inc." It is unclear what relationship Immanuel Medical Center has with Alegent Health. However, for ease of reference, the court [*2] refers to the entity named here--Immanuel Medical Center.

**I. BACKGROUND**

Plaintiff Robert F. Baker ("Baker") filed his Complaint in this matter on October 12, 2006. (Filing No. 1.) Plaintiff was thereafter granted leave to file a Second Amended Complaint, [2] which is the operative complaint in this matter. (*See* Filing Nos. 20 and 24.) Plaintiff's Second Amended Complaint alleges claims against all Defendants pursuant to *42 U.S.C. §1983*. (Filing No. 20 at CM/ECF p. 2.) In particular, Plaintiff alleges that Immanuel acted with deliberate indifference to Plaintiff's serious medical needs. (*Id.* at CM/ECF pp. 1, 4.) Plaintiff further alleges that Gensler and CMS also violated Plaintiff's *Eighth Amendment* rights and that they acted with deliberate indifference towards Plaintiff's serious medical needs. (*Id.* at CM/ECF pp 5-6.)

2    The term "Second Amended Complaint" is somewhat misleading here. Plaintiff was denied leave to file his Amended Complaint prior to service on Defendants. (Filing No. 15.) The (first) Amended Complaint was therefore never filed. For ease of reference, the court refers to Plaintiff's (first) Amended Complaint as his Second Amended Complaint.

Immanuel filed its Motion for Summary [*3] Judgment on September 21, 2007. (Filing No. 84.) Along with its Motion, Immanuel filed a filed an Index of Evidence and Brief in Support of Motion for Summary Judgment. (Filing Nos. 85 and 86.) Gensler and CMS filed their Motion for Summary Judgment, Index of Evidence, and Brief in Support of Motion for Summary

Judgment on November 8, 2007. (Filing Nos. 94-96.) Baker filed a Brief in Opposition to Immanuel's Motion, but did not submit any evidence. (Filing No. 89.) Likewise, Baker filed a Brief in Opposition to Gensler and CMS' Motion, but did not submit any evidence. (Filing No. 99.)

The Federal Rules of Civil Procedure and the court's local rules require that evidence in support of a motion for summary judgment be "authenticated by affidavit." NECivR 7.1(b)(2)(C); *see also Stuart v. General Motors Corp., 217 F.3d 621, 636 n.20 (8th Cir. 2000)* ("To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of *Fed. R. Civ. P. 56(e).* Documents which do not meet those requirements cannot be considered.").

Additionally, [*4] the party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

The court has carefully reviewed the documents submitted by all of the parties. While Defendants each submitted a statement of material facts in accordance with the court's rules, Baker has not. Further, Defendants submitted evidence which was properly authenticated by affidavit or through Baker's sworn deposition testimony. Although Baker submitted two opposition briefs, he submitted no evidence, even when the record in this matter is [*5] construed liberally. In light of this, the court adopts the following undisputed material facts, all of which were set forth by Defendants in their briefs.

## II. RELEVANT UNDISPUTED FACTS

### Background

1. Plaintiff is an inmate at the Douglas County Correctional Center (the "DCCC") in Omaha, Nebraska. (Filing No. 20 at CM/ECF pp. 2-3.)

2. Immanuel is a nonprofit corporation, organized under the laws of the State of Nebraska. (Filing No. 85, Attach. 5, at CM/ECF p. 1.)

3. Immanuel does not have any type of employment relationship with the State of Nebraska, nor does it have any type of employment relationship with any agent or representative of the State of Nebraska. (*Id.* at CM/ECF p. 2.)

4. Neither the State of Nebraska nor any agent or representative of the State of Nebraska is entwined in the management or control of Immanuel. (*Id.*)

5. Immanuel does not have any type of employment relationship with the City of Omaha, nor does it have any type of employment relationship with any agent or representative of the City of Omaha. (*Id.*)

6. Neither the City of Omaha nor any agent or representative of the City of Omaha is entwined in the management or control of Immanuel. (*Id.*)

7. Immanuel employs the nurses [*6] and x-ray technicians who provide treatment in Immanuel's emergency room. (*Id.* at CM/ECF p. 1.)

8. Immanuel does not employ, nor have any employment relationship with, any physicians who provide services in Immanuel's emergency room. (*Id.* at CM/ECF pp. 1-2.)

9. CMS is a private company under contract to provide medical services to inmates at the DCCC. Gensler is and was at all relevant times to this action a physician and independent contractor providing medical care and treatment to inmates at the DCCC on behalf of CMS. (Filing 56 at CM/ECF p. 1.)

Plaintiff's August 19, 2006 Emergency Room Visit

10. On August 19, 2006, Plaintiff was treated at Immanuel. (Filing No. 85, Attach. 2, at CM/ECF p. 1; Attach. 3 at CM/ECF p. 1; Attach. 4 at CM/ECF p. 1; Filing No. 95, Attach. 7.)

11. Plaintiff was examined and treated by Dr. Holcomb, an independent contractor providing services at Immanuel's emergency room, Lou Ann Neneman, R.N. and Pamela Marr, R.N. (Filing No. 85, Attach. 2, at CM/ECF p. 1; Attach. 3 at CM/ECF p. 1; Attach. 4 at CM/ECF p. 1.)

12. In determining the proper course of care and treatment for Plaintiff, Dr. Holcomb and Immanuel's staff relied on their professional judgment, training, [*7] and skill, and were not influenced by the Omaha Police Department nor any other agent or representative of the State of Nebraska or City of Omaha. (*Id.,* Attach. 2, at CM/ECF pp. 1-2; Attach. 3 at CM/ECF pp. 1-2; Attach. 4 at CM/ECF pp. 1-2.)

13. In providing treatment to Plaintiff, neither the Omaha Police Department nor any other agent or repre-

sentative of the State of Nebraska or City of Omaha exercised coercive power or encouraged Dr. Holcomb or Immanuel's staff to employ a certain manner of care and treatment for Baker. (*Id.,* Attach. 2, at CM/ECF p. 2; Attach. 3 at CM/ECF p. 2; Attach. 4 at CM/ECF p. 2.)

14. Dr. Holcomb and Immanuel's staff did not act as a willful participant in a joint activity with the State of Nebraska or the City of Omaha in their treatment and care of Baker. (Filing No. 85, Attach. 2, at CM/ECF p. 2; Attach. 3 at CM/ECF p. 2; Attach. 4 at CM/ECF p. 2.)

Plaintiff's Medical Treatment at the DCCC

15. After his emergency room visit, Plaintiff was transported to the DCCC. Upon admission, a Jail Medical History and Screening was completed. At that time, Plaintiff did not mention a knee injury. (Filing No. 95, Attach. 1, at CM/ECF p. 2; Attach. 3, at CM/ECF pp. 24-25.)

16. [*8] Gensler and other CMS personnel examined Baker on multiple occasions following his August 19, 2006 arrest and found no medical need for an MRI of his knee or a CAT Scan of his head. (Filing No. 95, Attach. 1, at CM/ECF p. 2.)

17. On September 18, 2006, Plaintiff demanded an "immediate operation" of his knee as purportedly indicated by Mercy Hospital in Council Bluffs, Iowa. (*Id.,* Attach. 4, at CM/ECF p. 19.)

18. Gensler reviewed records from Mercy Hospital regarding a knee injury for which Plaintiff was treated in April 2006. The records indicated that Plaintiff injured his knee while fleeing the police. (*Id.,* Attach. 1, at CM/ECF pp. 2-3; Attach. 4, at CM/ECF pp. 29-31.)

19. The diagnosis made at Mercy was a "small avulsion fracture from the lateral tibial plateau." Plaintiff was instructed to follow up when released from jail, at which time an MRI would be performed if indicated. (*Id.,* Attach. 1, at CM/ECF pp. 2-3; Attach. 4, at CM/ECF pp. 29-31.)

20. Gensler fully examined Plaintiff's knee in September 2006. Gensler initially suspected that Plaintiff's knee pain was the result of torn cartilage, but his examination did not support such a finding. In fact, Gensler did not find any defects [*9] or abnormal conditions affecting Plaintiff's knee. (*Id.,* Attach. 1, at CM/ECF p. 3; Attach. 3, at CM/ECF pp. 34-35.)

21. Because Gensler's examination did not reveal any defects and because the alleged injury had occurred five months prior to the examination, Gensler determined that "immediate surgery" was unnecessary. As a result, Gensler prescribed Tylenol for Plaintiff's alleged knee

pain. (*Id.,* Attach. 1, at CM/ECF p. 3; Attach. 3, at CM/ECF pp. 7, 34-35.)

22. With respect to Plaintiff's complaints of a "cracked skull," Gensler examined Plaintiff in September 2006 and determined that the numbness that Plaintiff cited was likely the result of a contused nerve along the supraorbital notch of the eye. Gensler concluded that Plaintiff would likely recover without medical intervention. Gensler prescribed Motrin for Plaintiff's headaches. (*Id.,* Attach. 1, at CM/ECF p. 3; Attach. 3, at CM/ECF pp. 7, 34-35.)

23. Gensler repeatedly prescribed Tylenol to treat Plaintiff's headaches and responded to Plaintiff's requests for a CAT Scan, indicating that no such procedure was warranted by his examination. (*Id.,* Attach. 1, at CM/ECF pp. 3-4; Attach. 3, at CM/ECF pp. 34-35; Attach. 4, at CM/ECF pp. [*10] 2-4.)

24. Plaintiff has never been told by anyone that he needs a CAT Scan, but personally believes that a CAT Scan is warranted due to prior injuries. Plaintiff agrees that he received treatment for his headaches from Gensler in the way of Ibuprofen and also admits that Gensler's treatment in this regard has helped Plaintiff avoid being "in a mess of trouble right now." (*Id.,* Attach. 1 at CM/ECF pp. 3-4 Attach. 6, at CM/ECF p. 25.)

25. The medical care provided to Plaintiff by Gensler and his staff at DCCC was at all times in compliance with generally recognized standards of care, skill and knowledge as used in Omaha, Nebraska or similar localities. (*Id.,* Attach. 1, at CM/ECF pp. 1-2.)

## III. ANALYSIS

### A. Standard of Review

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. Pro. 56(c). See also Egan v. Wells Fargo Alarm Servs., 23 F.3d 1444, 1446 (8th Cir. 1994).* It is not the court's function to weigh evidence in the summary judgment record [*11] to determine the truth of any factual issue. *Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999).* In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997).*

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would

permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County, 23 F.3d 1410, 1412 (8th Cir. 1994)* (quoting *Gregory v. City of Rogers, 974 F.2d 1006, 1010 (8th Cir. 1992)).* "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).*

### B. Immanuel's Motion for Summary Judgment

Immanuel seeks summary judgment in its favor primarily because it was not acting "under color of state law" in its treatment of Plaintiff. [*12] (Filing No. 86.) Plaintiff seeks relief against Immanuel pursuant to *42 U.S.C. § 1983.* To obtain relief under *42 U.S.C. § 1983,* the plaintiff must show (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that a person acting under color of state law caused the deprivation. *West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).* "The ultimate issue in determining whether a person is subject to suit under *§ 1983* is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" *Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982); Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).* Thus, an allegation that a private entity has deprived the plaintiff of a constitutional right fails to state a cause of action under *42 U.S.C. § 1983. See, e.g., Pino v. Higgs, 75 F.3d 1461, 1464-67 (10th Cir. 1996)* ("To bring a claim under *§ 1983,* a plaintiff must initially establish that a defendant acted 'under color of any statute, ordinance, regulation, custom, or usage, of any State' to deprive the plaintiff of 'any rights, privileges, [*13] or immunities secured by the Constitution and laws' of the United States. *42 U.S.C. § 1983.*") (citations omitted). Therefore, if the actions of the defendant were "not state action, our inquiry ends." *Rendell-Baker, 457 U.S. at 838.*

However, the acts of a private party may be "fairly attributable" to the state in certain circumstances when the private party acts in concert with state actors. *Id. at 838 n. 6.* Although a private person who is a willful participant in joint action with a state actor may act under color of state law, there must at least be a shared purpose to deprive the plaintiff of a constitutional right, namely, "a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley, 994 F.2d 449, 451-52 (8th Cir. 1993),* cert. denied, *510 U.S. 1111, 114 S. Ct. 1055, 127 L. Ed. 2d 376 (1994). Accord Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997).* However, simply performing a service to the public or accepting public funding does not transform an otherwise-private entity into a state actor. *Rendell-Baker, 457 U.S. at 840-42* ("That a private entity performs a function which serves the public does not make its acts state action.").

The undisputed evidence [*14] here shows that Immanuel was not acting under color of state law when it provided treatment to Plaintiff. It is uncontroverted that Immanuel does not have an employment relationship with the State of Nebraska or the City of Omaha. (Filing No. 85, Attach. 5, at CM/ECF pp. 1-2.) It is also uncontroverted that no agents or representatives of the State of Nebraska or the City of Omaha are involved in the management or control of Immanuel. (*Id.*) Further, although Immanuel is subject to state regulation and public funding, and performs public services, this is not enough to transform it into a state actor.

Plaintiff's core argument, again unsupported by evidence, is that Immanuel was influenced by City of Omaha employees (police officers) at the time of treatment. The undisputed evidence shows that no Immanuel employees or other individuals who treated Plaintiff were influenced or coerced by anyone affiliated with the State of Nebraska or the City of Omaha. (*Id.,* Attach. 2, at CM/ECF pp. 1-2; Attach. 3 at CM/ECF pp. 1-2; Attach. 4 at CM/ECF pp. 1-2.) To the contrary, Immanuel employees and other individuals treating Plaintiff relied instead on their professional judgment, training, and skill. [*15] (*Id.,* Attach. 2, at CM/ECF pp. 1-2; Attach. 3 at CM/ECF pp. 1-2; Attach. 4 at CM/ECF pp. 1-2.) Because Baker has not shown a shared purpose between the State of Nebraska or City of Omaha and Immanuel, Immanuel cannot be said to be a state actor.

As set forth by the Federal Rules of Civil Procedure, "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." *Fed. R. Civ. Pro. 12(h)(3).* Subject matter jurisdiction is proper where a plaintiff asserts a "non-frivolous claim of a right or remedy under a federal statute," commonly referred to as "federal question" jurisdiction. *Northwest South Dakota Prod. Credit Ass'n v. Smith, 784 F.2d 323, 325 (8th Cir. 1986).* Because Plaintiff has not shown that Immanuel is a "state actor," Plaintiff has not set forth a claim under a federal statute and has not otherwise established a basis for "federal question" jurisdiction over this matter. Therefore, this court does not have subject matter jurisdiction over Plaintiff's claims and summary judgment in favor of Immanuel is warranted as to all claims contained in the Second Amended Complaint.

## C. CMS and Gensler's [*16] Motion for Summary Judgment

Defendants CMS and Gensel seek summary judgment in their favor because Plaintiff has failed to submit any evidence of the they were deliberately indifferent to Plaintiff's serious medical needs. (Filing No. 96.) Plaintiff seeks relief against CMS and Gensler for violations of the *Eighth* and *Fourteenth Amendments to the U.S. Constitution*.

### 1. *Eighth Amendment* Claim

To sustain a claim under the *Eighth Amendment*, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*. The plaintiff must allege and show that he suffered objectively serious medical needs, and that officials actually knew of but deliberately disregarded those needs. *Hartsfield v. Colburn, 491 F.3d 394 (8th Cir. 2007)*. "[S]ociety does not expect that prisoners will have unqualified access to health care. Therefore, 'deliberate indifference to medical needs amounts to an *Eighth Amendment* violation only if those needs are 'serious.'" *Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)* (citing *Estelle, 429 U.S. at 103-104*). However, "a complaint that a physician has been negligent in diagnosing or [*17] treating a medical condition does not state a valid claim of medical mistreatment under the *Eighth Amendment*. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle, 429 U.S. at 106; see also Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993)* ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.").

A "serious" medical need must be either obvious to a layperson or supported by medical evidence, such as a physician's diagnosis. *Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999)*. Further, the failure to diagnose and treat a medical condition "does not constitute punishment within the meaning of the *Eighth Amendment* unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)* (citations omitted).

Here, Plaintiff's injuries [*18] related to a previous knee injury and to head injuries. The undisputed evidence shows that at the time he entered into DCCC custody, Plaintiff did not mention his knee injury to medical staff. (Filing No. 95, Attach. 1, at CM/ECF p. 2; Attach 3, at CM/ECF pp. 24-25.) Further, Gensler and CMS employees examined Plaintiff's knee several times at the DCCC and found no medical need for an MRI. (*Id.*, Attach. 1, at CM/ECF p. 2.) The only evidence that suggests that Plaintiff *may* need an MRI of his knee is the April 2006 medical records. Such records state that Plaintiff should follow up on his knee injury after getting out of jail, including an MRI *if indicated*. (*Id.*, Attach. 1, at CM/ECF pp. 2-3; Attach. 4, at CM/ECF pp. 29-31.) The evidence is clear that Gensler and CMS repeatedly examined Plaintiff's knee and treated Plaintiff's knee pain. The court therefore finds that Plaintiff has not established that his knee pain was "serious." Further, even if Plaintiff's knee injury was considered "serious," there is no evidence that Gensler or CMS failed to act or acted with deliberate indifference. Plaintiff's complaints regarding the treatment he received for his knee injury amount to "disagreement [*19] with a medical judgment," which is not enough to sustain an *Eighth Amendment* claim. *Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993)*.

The same is true of Plaintiff's head injuries. Based on nothing more than his own lay opinion, Plaintiff alleges that he has numbness, a "cracked skull," potential "bleeding on the brain," and other conditions relating to his head. Gensler and CMS personnel have repeatedly examined Plaintiff, diagnosed his headaches and numbness as relating to a nerve near his eye. (*Id.*, Attach. 1, at CM/ECF p. 3; Attach. 3, at CM/ECF pp. 7, 34-35.) Gensler and CMS personnel have treated Plaintiff's headaches and determined that a CAT Scan is unnecessary. (*Id.*, Attach. 1, at CM/ECF pp 3-4; Attach. 3, at CM/ECF pp. 34-35; Attach. 4, at CM/ECF pp. 2, 4.) Plaintiff has submitted no evidence contradicting these facts. As with his knee injuries, Plaintiff's complaints with respect to his headaches, numbness, and related issues are not "serious." Even if such medical needs are considered "serious," there is no evidence that Gensler or CMS failed to act or acted with deliberate indifference towards Plaintiff's medical needs. The court therefore grants summary judgment in favor [*20] of Gensler and CMS as to all of Plaintiff's claims.

### 2. *Fourteenth Amendment* Claim

"The *Fourteenth Amendment's Due Process Clause* protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005)*. Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. *Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir. 1999) (en banc)*. Further, substantive due process protects prisoners from conduct which

"shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998)* (citations omitted). Substantive due process rights are implicated when a state actor "engages in conduct that is so outrageous that it shocks the conscience or otherwise offends judicial notions of fairness, or is offensive to human dignity." *Id.* (citations and quotations omitted).

Here, Plaintiff has not alleged any violations of procedural due process rights. Therefore, his claims must [*21] relate to substantive due process. Again, however, Plaintiff has failed to submit any admissible or authenticated evidence that he had a protected liberty interest or that the conduct of CMS or Gensler was "outrageous" or "offensive to human dignity." *Id.* To the contrary, the evidence before the court is that CMS and Gensler provided substantial "medically indicated" treatment to Plaintiff. Summary judgment must also be granted in favor of CMS and Gensler on Plaintiff's *Fourteenth Amendment* claim.

## IV. PENDING MOTIONS

### A. Motion to Amend

Plaintiff filed a Motion for Leave to File an Amended Complaint. (Filing No. 110.) Plaintiff's proposed amended complaint seeks to both add additional defendants and add claims against the current Defendants (*Id.* at CM/ECF pp. 4-19.) *Rule 15(a) of the Federal Rules of Civil Procedure* provides that leave to amend "shall be freely given when justice so requires." The applicable standard is summarized in *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*, which states:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent [*22] reason-such as undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.- the leave sought should, as the rules require, be "freely given."

*Id.*

However, the Eighth Circuit has held that it is not an abuse of discretion to deny a motion to amend when late tendered amendments involve new theories of recovery and impose additional discovery requirements. *See Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998); Dover Elevator Co. v. Arkansas State Univ., 64 F.3d 442, 448 (8th Cir. 1995); see also Barrett v. Independent Order of Foresters, 625 F.2d 73, 75 (5th Cir. 1980)* (affirming denial of leave to amend, although bad faith and dilatory motive were not found, where "amendment sought to add several ... additional counts" and "[e]ven though the motion was not filed until nearly ten months after the original complaint, there would appear to be no matters ... which could not have been raised initially"). Accordingly, "[a]t some point. . . time delay on the part of a plaintiff can be procedurally fatal. In that situation, the plaintiff must meet the burden of showing [*23] that the delay 'was due to oversight, inadvertence, or excusable neglect[.]'" *Gregory v. Mitchell, 634 F.2d 199, 203 (5th Cir. 1981)* (citing *Frank Adam Electric Co. v. Westinghouse Electric & Mfg. Co., 146 F.2d 165, 167 (8th Cir. 1945)).*

Plaintiff filed his Motion for Leave to File an Amended Complaint on December 19, 2007, over a year after he filed his original Complaint in this matter and nine months after he filed his Second Amended Complaint. The incidents which are the subject of Plaintiff's proposed amended complaint were known to Plaintiff during the pendency of this case. However, Plaintiff did not raise these issues until after Defendants filed a Motion for Summary Judgment. Furthermore, prior to the filing of his Motion for Leave to File an Amended Complaint, Plaintiff actively moved his case forward by proceeding with discovery and filing numerous motions.

The deadline for conducting discovery in this case expired on October 8, 2007. The deadline for filing dispositive motions expired on November 8, 2007. Therefore, because this case has progressed past the stage of discovery, and Plaintiff's late tendered amendment involves new theories of recovery that would involve additional [*24] discovery, the court denies Plaintiff's Motion for Leave to File an Amended Complaint.

### B. Discovery-Related Motions

Also pending before the court are numerous other motions, some of which have been withdrawn by Plaintiff, but all of which deal with discovery and case progression issues. The court has carefully reviewed the record and finds that Defendants have complied with Plaintiff's discovery requests fully and in good faith. [3] Plaintiff's motions (filing nos. 98, 105, 114, 115, and 117) are therefore denied. Immanuel's related Motion to Strike (filing no. 103) is likewise denied.

3    The court notes that chief among Plaintiff's discovery-related complaints is that the nurse who treated him at Immanuel, Pamela Marr, has not replied to his written deposition questions.

However, the record clearly shows that Ms. Marr is critically ill and hospitalized and therefore cannot respond to Plaintiff's propounded discovery. (Filing No. 102, Attach. 3.)

## C. Motion to Treat Injuries

Plaintiff also filed a Motion for Order to Treat Plaintiff's Injuries. (Filing No. 90.) Summarized, Plaintiff seeks an order from this court requiring the Defendants to provide treatment for Plaintiff from entities other [*25] than Defendants. (*Id.* at CM/ECF p. 2.) While this court may have the discretion to enter such an order, on the record before the court, outside medical treatment is not warranted. *See Green v. Branson, 108 F.3d 1296, 1304 (10th Cir. 1997)* (holding that district court did not abuse its discretion in denying motion for medical treatment when prisoner's "primary purpose was to obtain medical care and to complain of deliberate indifference to his serious medical needs" and "the demonstration of disputes and controversies over his medical condition" was "secondary"); *Kendrick v. Frank, No. 05-C-0976, 2007 U.S. Dist. LEXIS 55135, 2007 WL 2207907, at *1-2 (E.D. Wis. July 29, 2007)* (same).

IT IS THEREFORE ORDERED that:

1. Defendant Immanuel Medical Center's Motion for Summary Judgment (filing no. 84) is granted. Defendant T.D. Gensler and Correctional Medical Services' Motion for Summary Judgment (filing no. 94) is granted. All claims contained in Plaintiff's Second Amended Complaint (filing no. 20) against these three Defendants are dismissed with prejudice.

2. A separate judgment will be entered in accordance with this memorandum and order.

3. Plaintiff's pending motions (filing nos. 90, 98, 105, 110, 114, 115 and 117) [*26] are denied in accordance with this memorandum and order.

4. Immanuel's Motion to Strike (filing no. 103) is denied.

5. The Clerk of the court is directed to send a copy of this memorandum and order and the judgment to Plaintiff at his last known address.

Dated February 4, 2008.

BY THE COURT

s/ Warren K. Urbom

United States Senior District Judge

**Exhibit "D"**
**06-465SLR**

38 of 64 DOCUMENTS

**LARRY F. WILSON, Plaintiff, v. NURSE RACHEL CARTWRIGHT, DR. SITTA ALIE, and DOCTOR ROBERTA BURNS, Defendants.**

**Civ. No. 05-437-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2008 U.S. Dist. LEXIS 44534*

**June 9, 2008, Decided**

**PRIOR HISTORY:** *Wilson v. First Corr. Med., 2006 U.S. Dist. LEXIS 71004 (D. Del., Sept. 29, 2006)*

**COUNSEL:** [*1] Larry F. Wilson, Lewes, Delaware. Pro se Plaintiff.

Andrea C. Rodgers, Esquire, and John A. Elzufon, Esquire, Elzufon, Austin, Readon, Tarlov & Modell P.A. Wilmington, Delaware. Counsel for Defendant Cartwright.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM OPINION**

Dated: 6/9/08

Wilmington, Delaware

**Sue L. Robinson, District Judge**

**I. INTRODUCTION**

On June 27, 2005, Larry F. Wilson, a *pro se* plaintiff proceeding *in forma pauperis* ("plaintiff"), filed the present action pursuant to *42 U.S.C. § 1983*, alleging violation of his constitutional rights by First Correctional Medical ("FCM"), Rachel Cartwright R.N. ("Nurse Cartwright"), and Dr. Sitta Alie ("Dr. Alie"). [1] Dr. Roberta Burns ("Dr. Burns") was added to the action on May 14, 2007. (D.I. 63) Nurse Cartwright, Dr. Alie, and Dr. Burns were all employed by FCM during the period in question. FCM was dismissed from the action on September 29, 2006. (D.I. 52, 53)

1 At the time of the incident in question, FCM contracted with the Delaware Department of Correction to provide medical care for inmates incarcerated at State of Delaware penal institutions, including Sussex Correctional Institution ("SCI"), where plaintiff was [*2] incarcerated.

Plaintiff claims that defendants were deliberately indifferent to his medical needs. [2] He also asserts supplemental state claims under Delaware law for medical malpractice and negligence. In response, defendant Nurse Cartwright filed a motion to dismiss the complaint on the grounds that plaintiff: 1) failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), *42 U.S.C. § 1997e*; 2) failed to state a civil rights claim showing "deliberate indifference;" and 3) failed to file an affidavit of merit as required for a medical malpractice claim pursuant to *18 Del.C. § 6853(a)(1).* [3] (D.I. 75) The court has jurisdiction over the present suit pursuant to *28 U.S.C. § 1331.* For the reasons set forth below, the court grants defendant's motion to dismiss.

2 The court will only address whether defendant Nurse Cartwright was deliberately indifferent to plaintiff's medical needs, as Nurse Cartwright is the only party making the motion.

3 "No healthcare negligence lawsuit shall be filed in this State unless the complaint is accompanied by... an affidavit of merit as to each defendant signed by an expert witness... and accompanied by a current curriculum vitae [*3] of the witness, stating that there are reasonable grounds to believe that there has been healthcare medical negligence committed by each defendant."

**II. BACKGROUND** [4]

4   The facts below are taken from the complaint (D.I. 2, 26) and accepted as true for purposes of this motion practice. *See Trump Hotels &Casino Resorts, Inc. v. Mirage Resorts, Inc.,* 140 F.3d 478, 483 (3d Cir. 1998).

On June 11, 2005, plaintiff was an inmate at SCI in Georgetown, Delaware. At approximately 11:40 am, while playing basketball, he sustained an injury to his finger. Plaintiff notified Housing Officer Darby, who sent plaintiff to SCI's medical department for treatment. Upon his arrival, the nurse on duty, defendant Nurse Cartwright, attempted to splint his wounded finger with a "popsicle stick, tape, and gauze," despite the fact that it was "clearly ... broken and need[ed] emergency medical attention." (D.I. 2 at 1) Nurse Cartwright then called Dr. Alie and described the nature and extent of plaintiff's injury over the phone. Based on this description and without having any x-rays taken, Dr. Alie's diagnosis was that plaintiff had a dislocated finger. Plaintiff was given two pain pills and told to return in thirty [*4] minutes, at which point Nurse Cartwright was to attempt to put the finger back into place.

Plaintiff returned to the medical department, and observed Nurse Cartwright on the phone with Dr. Alie receiving directions on how to "pop" a finger back in place. (*Id.* at 1-2) Nurse Cartwright then tried these procedures on plaintiff in an attempt to remedy the dislocation. When the procedures were unsuccessful, Nurse Cartwright again consulted with Dr. Alie via telephone. Plaintiff was given another pain pill and told to return again after an additional thirty minutes when they again would try to "pop" his finger back into place. Upon his subsequent return, plaintiff was told by Nurse Cartwright that "she was not going to touch [his] finger again and she was going to tell the doctor [that his] finger was not changing and in fact it was broke[n]." (*Id.*) Plaintiff was then transported to Beebe Hospital in Lewes, Delaware, for further treatment. X-rays were taken of plaintiff's hand which revealed a broken bone in his finger.

Plaintiff filed a medical grievance with the prison subsequent to the incident in question. Plaintiff alleges that he filed an initial grievance shortly following the injury [*5] and then filed a second grievance requesting to see an orthopaedic surgeon 2-3 weeks after the initial injury. (D.I. 43 at 2) Plaintiff was transferred to the Delaware Correctional Center in Smyrna, Delaware, and has continued to file grievances regarding his medical treatment. [5] (*Id.* at 2) As a result of the alleged inadequate medical care, plaintiff claims "damage and ongoing problems with his hand." (D.I. 14 at 1) Plaintiff also claims that the emergency room physician suggested that he see an orthopaedic surgeon for additional treatment; however, plaintiff has not been permitted to consult with said specialist. (*Id.* at 4) Plaintiff contends that he received inadequate medical treatment contrary to his federal constitutional rights and in violation of Delaware state law.

5   Plaintiff provides grievances dated 8/26/05 and 10/26/05. In the grievance dated 8/26/05, plaintiff requests to be seen by a doctor and then by a specialist. (D.I. 43 at ex. A) In the grievance dated 10/26/05, under a description of the complaint, the following appears: "Inmate complaint: This is my third medical grievance[;] the first one I signed off on because I though[t] the problem was being solved." Again [*6] plaintiff requests to see a orthopaedic surgeon/specialist. (D.I. 43 at ex. A) A third grievance was not filed with the court.

## III. STANDARD OF REVIEW

In reviewing a motion filed under *Federal Rule of Civil Procedure 12(b)(6)*, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus,* -- U.S. --, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007); *Christopher v. Harbury,* 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* -- U.S. --, 127 S.Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (interpreting *Fed. R. Civ. P. 8(a)*) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 1964-65 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise [*7] a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1959.

Plaintiff is required to make a "showing" rather than a blanket assertion of an entitlement to relief. *Phillips v. County of Allegheny,* 515 F. 3d 224, 232 (3d Cir. 2008). "[Without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. *Id.* (Citing *Twombly,* 127 S.Ct. at 1965 n.3). Therefore, "stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element." *Id. at 235* (quoting *Twombly, 127 S.Ct. at 1965 n.3*). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation

that discovery will reveal evidence of the necessary element." *Id. at 234*. Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint and its amendment, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus, -U.S.-, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081.(2007)* [*8] (citation omitted).

## IV. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant contends that this action should be dismissed as to her because plaintiff failed to exhaust his administrative remedies prior to filing this action, as required under the PLRA, *42 U.S.C. § 1997e*. [6] Exhaustion is mandatory, and prisoners must exhaust administrative remedies for any claim that arises within the prison, regardless of any limitations on the kind of relief available through the grievance process. *Porter v. Nussle, 534 U.S. 516, 532, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)*. Prison conditions have been held to include the "environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." *Booth v. Churner, 206 F.3d 289, 295 (3d Cir. 2000)*.

6    The PLRA provides, in pertinent part:

"No action shall be brought with respect to prison conditions under *section 1983* of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

*42 U.S.C. § 1997e(a)*.

Based on the complaint and the record before the court, it is clear that plaintiff did not exhaust his administrative [*9] remedies before filing suit. Plaintiff has provided the court with two grievances. The earliest of the two grievances, however, is dated August 26, 2005, nearly two months following plaintiff's filing of this action. Additionally, both grievances were filed with the prison by plaintiff in an attempt to receive additional medical care in the form of a follow up appointment with an orthopaedic surgeon/specialist. Neither grievance provided by plaintiff involve Nurse Cartwright or her medical treatment of plaintiff on the day in question. (D.I. 43 at ex. A) Plaintiff alleges he filed an initial grievance following his injury and that this grievance was "on the actions that took place by (two) of the defendants Nurse Cartwright and by Dr. Sitta Alie." [7] (D.I.

43 at 1) Assuming that plaintiff filed this initial grievance immediately following his injury, plaintiff did not allow reasonable time to receive a response, as he filed this suit a mere sixteen days after his injury. Plaintiff did not give the grievance process a chance prior to filing this action, therefore, plaintiff's complaint against Nurse Cartwright is dismissed for failure to exhaust his administrative remedies. [8] The court, [*10] nevertheless, will address the merits of defendant's additional grounds for dismissal.

7    Plaintiff has not provided the court with this initial grievance and claims that his grievance was voided when he was transferred from SCI and that when FCM's contract with the Department of Corrections expired FCM retained all of the grievances against them leaving the Department of Corrections with no copies. (D.I. 78 at 2)
8    Plaintiff also argues that his administrative remedies were exhausted because FCM's (employer of Nurse Cartwright) contract as the medical provider for the Delaware Department of Correction's system expired June 30, 2005. (D.I. 78 at 3) He argues that he can not "re-open old existing grievance" and that, because FCM is no longer the medical provider at the prison, he had no recourse. *Id.* However, this argument has no merit, as the grievance process is administered by the Department of Correction and is intended to redress problems, regardless of who the medical provider is.

### B. Deliberate Indifference

The *Eighth Amendment* proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble, 429 U.S. 97, 103-105, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)*. [*11] In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)*. The Third Circuit has found "deliberate indifference" in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. *See Durmer, 991 F. 2d at 68* (citing *Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987))*. It has also found "deliberate indifference" to exist where the prison official persists in a particular course of treatment "in face of resultant pain and risk of permanent injury." *White v. Napoleon, 897 F.2d at 109-11*

(holding that allegations of several instances of flawed medical treatment state a claim under *Eighth Amendment*).

An official's conduct, however, does not constitute deliberate indifference unless it is accompanied [*12] by the requisite mental state. Specifically, "the official [must] know ... of and disregard ... an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).* Mere medical malpractice is insufficient to present a constitutional violation. *Estelle v. Gamble, 429 U.S. at 106.*

Viewing the facts and all reasonable inferences therefrom in a light most favorable to plaintiff, the court finds that plaintiff has not proffered sufficient factual allegations to establish that Nurse Cartwright was deliberately indifferent when treating his injury. Plaintiff asserts that Nurse Cartwright committed "deliberate indifference ... because she could plainly see through the plaintiffs deformed hand that he needed X-rays, cast, etc." and, in doing so, she "delayed medical treatment" and "prevented the plaintiff from receiving proper medical care." (D.I. 78 at 2) Even if a broken finger were to be considered a serious medical claim, plaintiff asked for and received treatment that same day within hours of his injury. The [*13] medical treatment given was consistent with the initial diagnosis. When on the first attempt that treatment was unsuccessful, plaintiff was transported to Beebe Hospital for x-rays and further medical care. [9] (D.I. 2) At no point did Nurse Cartwright refuse to provide medical treatment to plaintiff or attempt to prevent plaintiff from receiving medical treatment. Any possible delay in transporting plaintiff to Beebe Hospital occurred in the course of treating plaintiff based on the initial diagnosis and was not caused by a non-medical reason. Based on the record presented, plaintiff's *§ 1983* claim against Nurse Cartwright does not rise to a constitutional level and, therefore, is dismissed.

[9]     Plaintiff also alleges that Nurse Cartwright denied medical treatment because she "was not going to send plaintiff to Hospital or ask to send plaintiff until plaintiff refused to let Defendant touch his hand again." (D.I. 78 at 1) This assertion is contradicted by plaintiff's initial complaint where plaintiff states that upon his return to the medical unit after the unsuccessful attempt, "Nurse Rachel stated to me that she was not going to touch my finger again and she was going to tell the doctor [*14] [that] my finger was not changing and in fact it was broken." Following this, plaintiff was taken to the hospital. (D.I. 2 at 2)

## C. Medical Negligence

Nurse Cartwright moves to dismiss any medical negligence claims on the basis that plaintiff failed to accompany the complaint with an affidavit of merit. Delaware law requires that, at the time of filing the complaint, it be accompanied by an affidavit of merit to each defendant signed by an expert witness. *18 Del.C. § 6853.* The statute provides for a single 60 day extension for the filing of the affidavit of merit, but only upon timely motion of the plaintiff and for good cause shown.

Plaintiff did not file an affidavit of merit with his complaint. Nor did he timely file a motion for an extension of time to file an affidavit of merit. Plaintiff's motion for extension was filed October 10, 2007, over two years from the filing of his complaint, and subsequent to defendant's motion to dismiss. Therefore, the court will grant Nurse Cartwright's motion to dismiss the medical malpractice and negligence claim.

## V. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted. An appropriate order shall issue.

## ORDER

At Wilmington [*15] this 9th day of June, 2008, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that defendant's motion to dismiss (D.I. 75) is granted.

/s/ Sue L. Robinson

United States District Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANGELO CLARK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 06-465 - SLR |
| | : | |
| REGIONAL MEDICAL FIRST | : | TRIAL BY JURY OF |
| CORRECTIONAL, | : | TWELVE DEMANDED |
| MANAGER ANGELA WILSON, AND | : | |
| CORRECTIONAL MEDICAL SERVICES | : | |
| | : | |
| Defendants. | | |

---

**CERTIFICATE OF SERVICE**

---

I, **Eileen M. Ford, Esquire**, hereby certify that on **July 30, 2008,** I electronically filed the **Correctional Medical Services, Inc.'s Response to Plaintiff's Motion for Summary Judgment {Related Docket #'s 112-116 & 121}** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

I have served, via first class, mail two copies of foregoing to the Pro Se Plaintiff:

Angelo Clark
SBI # 123209
Delaware Physchiatric Center
James E. Mitchell Bldg.
1901 N. DuPont Hwy
New Castle DE 19720

*/s/ Eileen M.Ford*
Eileen M. Ford, Esquire (ID No. 2870)
Marks, O'Neill, O'Brien & Courtney, P.C.
913 North Market Street, #800
Wilmington, DE 19801
(302) 658-6538
*Attorney for Defendant*

{DE113500.1}